# HARRY S. JONES

*vs.*

## GRANITE STATE FIRE INSURANCE COMPANY.

### Hancock.    Opinion February 25, 1897.

*Insurance.    Vacant Buildings.    Presumption.    Evidence.    R S., c. 49, § 20.*

The decision in the case of *White* v. *Phœnix Ins. Co.*, 83 Maine, 279, again reported in 85 Maine, 97, does not deny that the general burden of proof lies on an insurance company to prove that an insurance risk is increased by the vacancy or non-occupancy of dwelling-houses, but only that such burden may be aided by the common and natural presumption to that effect; and that, in a case utterly devoid of any evidence as to the situation or circumstances, such presumption would be sufficient to sustain the burden which the statutory provision casts upon the company.

The presumption belongs to the class of mixed presumptions of law and fact, or of presumptions of fact which are sanctioned by the law, because they are in consonance with reason and experience, and because from their importance and frequency of occurrence they have attracted the attention of the law and received its commendation; in principle like the presumption that all bills and notes are given or indorsed for value, or the presumption which prevails in favor of innocence, or sanity, or against fraud, and other presumptions that might be enumerated.

While this presumption has the effect of prima facie proof,—until counteracted by evidence,—when any evidence is adduced on either or both sides, then the burden of proof is upon the insurance company, aided as it may or may not be by the presumption, to make out the proposition it undertakes to maintain; and if the proofs stand in equilibrio on the proposition, then the company fails.

In this case the house destroyed by fire had been both vacant and unoccupied for more than a year, was situated in the outskirts of Ellsworth in a secluded and isolated location back from the road without any near neighbors, at a distance so great from the center of the city as not likely to receive any

protection from its fire department, and there was quite a tempting opportunity for evil-minded persons to visit the premises without being seen either coming or going. The fire broke out at midnight in the ell where laborers had been working during the day. Had the house been occupied at the time the fire might not have occurred or might have in its early inception been prevented.

*Held;* That on these facts, and such others as the evidence discloses, an action against the insurance company cannot be maintained.

ON REPORT.

The facts are stated in the opinion.

This was an action of assumpsit on an insurance policy issued by the defendant company on Dec. 9, 1892, on a two-story frame dwelling-house and addition and other buildings owned by plaintiff and situated on his farm in Ellsworth. The policy covers the dwelling-house and addition, which was insured for $500, and other out-buildings which were insured for $1250, making a total of $1750.

A fire occurred on the 4th day of May, 1895, causing the loss of the dwelling-house and addition, and this action was brought to recover the sum of $500, the amount of insurance thereon.

The writ is dated September 4th, 1895. The plea was the general issue with the brief statement:—"That the entire policy of insurance declared on by the plaintiff in this action had been rendered void because of the buildings therein described becoming vacant or unoccupied in March, 1894, and so remaining until the time of the fire, a space of about fourteen months, without the written consent or agreement of the defendant indorsed on said policy or added thereto, as was required by its terms and conditions, and that by reason of said vacancy and non-occupancy the risk on said buildings was materially increased."

The statute, R. S., c. 49, § 20, invoked by the defendant, is as follows:—"a change in the property insured, or in its use or occupation, or a breach of any of the terms of the policy by the insured, do not affect the policy unless they materially increase the risk."

*A. W. King,* for plaintiff.

It was the intention of the legislature in passing the statute to

prevent an insurance company from shaking off its liability under the claim that the property was unoccupied, unless that company proved that the risk of fire to the property was actually and in fact increased by the change of occupation. The legislature by using the words "materially increase the risk" meant that it should not be a mere theoretical or fanciful increase of the risk, but something actual and susceptible of demonstration.

That statute means that, taking everything into account, the dangers of fires that are removed by non-occupancy, as well as those risks which may attend occupied buildings, it must appear that the risk was materially increased. Here the risk was decreased.

*L. C. Cornish,* for defendant.

The plaintiff cannot recover because the risk was materially increased by reason of the vacancy and non-occupancy of the premises. *Lancy* v. *Home Ins. Co.,* 82 Maine, 492; *White* v. *Phœnix Ins. Co.,* 83 Maine, 279; *Same* v. *Same,* 85 Maine, 97.

Vacancy and non-occupancy:—May, Insurance § 249, a; *Bonnefant* v. *Ins. Co.,* 76 Mich. 654; *Hermann* v. *Adriatic Fire Ins. Co.,* 85 N. Y. 162; *Fehse* v. *Ins. Co.,* 74 Iowa 676; *Sexton* v. *Ins. Co.,* 69 Iowa, 99; *Weidert* v. *Ins. Co.,* 19 Ore. 261; (S. C. 20 Am. St. Rep. 809 and note p. 826); *Cook* v. *Continental Ins. Co.,* 70 Mo. 610 (S. C. 35 Am. Rep. 438); *Keith* v. *Quincy Mutual Fire Ins. Co.,* 10 Allen, 228; *Ashworth* v. *Ins. Co.,* 112 Mass. 422; *Corrigan* v. *Commercial Ins. Co.,* 122 Mass. 298; *Harrington* v. *Ins. Co.,* 124 Mass. 126; *Poor* v. *Ins. Co.,* 125 Mass. 274; *Litch* v. *Ins. Co.,* 136 Mass. 491; *Stone* v. *Ins. Co.,* 153 Mass. 475.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

PETERS, C. J. The contention in this case is whether the risks of an insurance on the house in question were or not materially increased by its non-occupancy, the terms of the policy, which must have been well understood by the insured, declaring the

policy to be void for such cause when not consented to by the insurance company. The facts are not in dispute.

An insurance of five hundred dollars was obtained by the plaintiff, December 7, 1892, on his two-story frame building and ell, the property having been estimated at the time as worth seventeen hundred and fifty dollars. The insurance came within the denomination of a farm risk. The buildings became vacant and unoccupied in March, 1894, and continued so, without the consent or knowledge of the company, for fourteen months, when, May 4, 1895, the same were totally destroyed by fire.

The house was situated on a large and finely cultivated farm, having a frontage of nearly half a mile on a county road, being Main street extended, running past it in a northerly and southerly direction. The farm extends easterly two miles to the easterly boundary of the city of Ellsworth, the easterly section of the same consisting variously of field, pasture and woodland. The uncultivated portion of it is traversed by the Maine Central railroad which runs northerly and southerly across it. The house, sixty years old and more, and in rather an indifferent state of repair, was located about twenty rods back from the road, and two barns that were not burned, nor insured that we are aware of, are still standing on the premises about twenty rods east of the location of the house. The farm on which the house stood is really in the outskirts of the city of Ellsworth in quite a secluded and isolated situation, being four-fifths of a mile from the Maine Central railroad station which is itself quite out of the central part of the city. There were at the time of the fire a few neighbors scattered along the road on both the north and south sides of the plaintiff's land, living in small, ordinary houses but not in close proximity to it; the nearest on the other side being eighty-five rods distant from the house. The city had an imperfect and inadequate fire system, but unavailable for the protection of such buildings as these situated two-thirds of a mile away. The fire department attempted to offer relief but failed to do so. The counsel for the plaintiff regards the fact as important that there is a running brook not far distant from the buildings, but neither firemen nor neighbors

had any means by which its waters could be used to extinguish the fire.

The fire was first discovered in the ell and shed attached to the main house at two o'clock in the night and soon resulted in a total loss. The premises were well cared for by the owner and his hired man in the day time, on account of his barns of hay and stock of cattle kept there, but neither owner nor laborer stayed on or near the premises during the night. It was customary for some one at work on the farm to visit the buildings daily or oftener, and on the afternoon preceding the fire the owner was about the house overseeing the work of his men who were engaged in repairing the stone foundation under the ell. He closed the house at about seven o'clock and went home, seeing no signs of fire or of anything unusual about the premises.

We feel constrained to declare, in view of all the facts respecting the condition and situation of the property, that its exposure to the risks of fire was seriously increased because of the vacancy of the unoccupied buildings. Whether the fire was caused either by accident or design, had there been some person living in the house at the time, the chances are that it might have been discovered in season to control it, or that it never would have occurred. The reasoning of the court in *Lancy* v. *Home Insurance Co.*, 82 Maine, 492, is applicable in this case, although of more forcible application in that case than in this.

It is doubtful if the meaning of the court in their interpretation of the statute which casts the burden of proof on insurance companies to show in case of loss of unoccupied houses that the non-occupancy materially increased the risk, as enunciated by the court in *White* v. *Phœnix Insurance Co.*, 83 Maine, 279,—the case again reported in 85 Maine, 97,—was correctly understood in the present case at the argument. The court does not deny that the burden of proving that fact rests on the insurance company, but decides that such burden, in a case devoid of any proof of the attendant circumstances, may be sufficiently sustained in the first instance by the natural presumption to that effect which is based upon the observation and experience of intelligent men generally.

In most courts the opinions of witnesses or the experience of companies on this point cannot be testified to, for the reason, that it is the common knowledge of mankind generally rather than the peculiar knowledge of specialists and experts. The court does not suppose that the legislature intended to deprive the insurance company of the aid of this common and natural presumption in support of the burden of proof which perhaps rather illogically rests upon it.

It is not pretended that the general burden of proof shifts from the insurer to the insured; and if, after all the facts on both sides are presented, the case in its proofs stands in equilibrio then the company does not prevail and the issue must be determined against the company. The principle is illustrated in the case of a suit on a piece of commercial paper where the general burden is on the plaintiff to prove value for the defendant's promise, and that burden does not change in any stage of the evidence in the case, although it is sustained, until weakened by other evidence, by the presumption of value which attaches to commercial paper. *Small* v. *Clewley,* 62 Maine, 135.

Mr. Best, in his valuable work on evidence, says that presumptions or presumptive evidence is as original as is direct evidence; and that the presumption of a fact is as good as any other proof of such fact when the presumption is legitimate. As illustrations of the principle that presumptions stand for proof until rebutted by evidence, the author remarks in this way:—"Although the law presumes all bills of exchange and promissory notes to have been given and endorsed for good consideration, it is competent for certain parties affected by these presumptions to falsify them by evidence. . . . . To this class also belongs the well known presumptions in favor of innocence, and sanity, and against fraud, etc.; the presumption that legal acts have been performed with the solemnities required by law, and that every person performs the duties or obligations which the law casts upon him." Best, Evidence *426.

The presumption which in this case is strong enough to stand as prima facie proof, until contradicted by evidence, is denominated a

presumption of fact sanctioned by the law, or a mixed presumption of law and fact. The law authorizes its adoption because it is in consonance with reason and experience, and because from its importance and frequency of occurrence it has attracted the attention of the law and received its commendation.

The fact that any property is not in the possession or under the close supervision of its owner naturally produces a belief that it is exposed to more than usual risks, such risks being more or less according to circumstances. Insurance companies invoke the benefit of this sort of presumption, and we think they are entitled to it in aid of the burden of proof which the statute imposes on them. At the same time any construction of the statute has but little, if any, pertinency in a consideration of the facts disclosed in the present case.

*Judgment for defendants.*