# PAULINE BRUNSWICK, Appellant, v. STANDARD ACCIDENT INSURANCE COMPANY.

### In Banc, May 16, 1919.

1. **THEORY OF TRIAL:** Same on Appeal: Accident Insurance: Suicide. Appellant must try his case in the appellate court on the same theory on which he tried it below. Where insured came to his death by taking cyanide of potassium and the accident policy provided that, if he came to his death by suicide, while either sane or insane, the company would pay the benficiary one-tenth of the principal sum, and neither the pleadings upon either side, nor the instructions, nor the evidence except the policy, contain the word suicide, the plaintiff cannot on appeal be heard to contend that a verdict for the company is not sustained by the evidence for that in any event the verdict should have been for at least one-tenth of the principal sum.

2. **ACCIDENT INSURANCE:** Taking Poison While Insane: Recovery. If the insured took cyanide of potassium while insane, his death was caused by accident within the purview of a policy of insurance against death "resulting directly, exclusively and independently of all other causes from accidental bodily injuries, except when self-inflicted when insane," for the last clause is expressly rendered void by statute (Sec. 6945, R. S. 1909).

3. ———: Intentional Taking Poison While Sane. If the insured intentionally swallowed cyanide of potassium, that is, if he committed suicide while sane, his death was not due to accident, and his beneficiary cannot recover under a policy which gives her the right to recover only for death resulting from accidental injuries. An act intentionally done by a sane man is not an accident.

4. ———: ———: Contract: Presumption Against Suicide: Proof of Accident: Burden. Section 6945, Revised Statutes 1909, leaves the parties to an accident insurance policy free to contract that there shall be no liability except for a death resulting from accidental injury, and where such is the contract and the insured was sane at the time of his death, the proof must show an accidental cause of death before there can be any recovery on the contract; and if the proof, even when aided by the presumption against suicide, shows suicide by the insured while sane, there can be no recovery by the beneficiary, for she has failed to meet the burden expressly assumed in the contract of proving insured's death by accident.

Brunswick v. Ins. Co.

5. ——: ——: **Sane or Insane: Burden of Proof.** If the insured commit suicide while insane, his death, being unintentional, is held to be accidental, and though suicide be expressly excepted in the policy the statute (Sec. 6945, R. S. 1909) eliminates the excepting clause and the beneficiary may recover; but if the insured were sane at the time of his death, the burden is on the plaintiff to prove that the death resulted from accidental injuries, and though that burden may sometimes be aided by the presumption against suicide, it is not affected by the statute (Sec. 6945, R. S. 1909), for the burden still rests upon plaintiff to prove that, if insured took poison which caused his death, he took it accidentally and not intentionally. [Distinguishing Logan v. Ins. Co., 146 Mo. 114, and Felter v. Ins. Co., 174 Mo. 1. c. 269.]

6. ——: **Inference From Taking Poison.** When plaintiff in the suit on an accident policy has shown that the insured died from taking cyanide of potassium self-administered, the inevitable inference arises that his death was caused either by accident or suicide, and plaintiff cannot recover if the evidence (aided by the presumption against suicide) shows suicide, unless the evidence further shows that the insured at the time he committed suicide was insane.

7. ——: **Presumption Against Suicide: Exclusion by Instruction.** As an abstract proposition it is clearly improper to instruct the jury, in a suit on an accident insurance policy, that there is no presumption in law that the taking of poison by the insured was accidental. But whether the giving of such an instruction is prejudicial error depends upon whether or not the facts do so conclusively show suicide that there is no room for such a presumption. If it cannot be said, by the court, as a matter of law, that the facts and circumstances proven show suicide and exclude any reasonable hypothesis of accident, then such an instruction is not only abstractly, but is concretely bad.

8. ——: ——: **Character and Force of Presumption.** The presumption against suicide is a rule of law deduced from convenience and necessity; it is not evidentiary in character, but automatically arises when there is no convincing evidence for or against suicide, and then, perforce of the presumption, a finding in favor of accidental death will be upheld. If there is evidence both for and against suicide (unless the evidence is equally balanced), the presumption has no place in the case. When it arises in the case as the result of the evidence adduced, it operates in only one of two ways: (a) it either forecloses the question, unless or until further evidence is offered by the other side, or (b) it shifts the burden of proof to the other side. But should this burden not be met, and should no other or countervailing evidence be adduced, the presumption will have the effect to conclude the question in favor of the side upon which it operates.

9. ——: ——: Character of Evidence of Suicide. The evidence for or against the fact of suicide may be either direct or circumstantial; and if the evidence in favor of suicide is wholly circumstantial, it ought to be such and of such weight as to negative every reasonable inference of death by accident.

10. ——: ——: Sufficiency of Evidence. Where defendant put in no evidence at all, and no affirmative facts to show suicide were adduced save and· except the proven facts that a few minutes before insured was found in a dying condition, due to his having taken cyanide of potassium, he was seen to fold up a handkerchief, that after his death a large quantity of this poison was found in a handkerchief in his pocket and that he had had this poison in his pocket for several days and knew what it was, the court could not say as a matter of law that the evidence was sufficient to overcome the presumption against suicide.

11. ——: ——: ——: Practice: Demurrer. If the facts and circumstances proven are sufficient to exclude every reasonable hypothesis favoring accident, the court should sustain a demurrer to the evidence; but if the facts and circumstances are sufficient, on account of the presumption against suicide, to take the case to the jury, then it should go to them under proper instructions, and they should not be told that there is no presumption of law that the taking of poison by insured was accidental.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

REVERSED AND REMANDED.

*Emerson E. Schnepp, Otto F. Karle* and *Taylor & Mayer* for appellant.

(1) The verdict was for the wrong party and was against the evidence and against the law under the evidence. The uncontroverted evidence is that William Brunswick died from the effect of taking cyanide of potassium, a deadly poison. There is no evidence which even tends to show otherwise. He therefore died from taking cyanide of potassium either (a) intentionally, whether sane or insane. Knights Templar v. Jarman, 187 U. S. 200, or (b) unintentionally, or, in other words, accidentally. If unintentionally (accidentally), then the defendant is absolutely liable under the

policy.   Unintentionally, or accidentally, means without knowing that he was taking a deadly poison. Accident Insurance Co. v. Crandal, 120 U. S. 527.   (2) Under a provision of the policy itself the defendant recognized suicide as an event upon the happening of which it would be liable under the policy.   It attempted to go further and reduce its liability, in the event of suicide, to one-tenth of the principal sum prescribed by the policy to be paid.   Under the statute it could not do this.   Its own construction of the policy showed it to be liable in the event of suicide and, being so liable, it could not, by any provision thereof, cut down or diminish that liability.   Keller v. Travelers Ins. Co., 58 Mo. App. 557; Whitfield v. Aetna Life Ins. Co., 205 U. S. 489.   (3) Furthermore, the verdict is such as to be absolutely and beyond question against the evidence and the law under the evidence, and for the wrong party, because the evidence shows that William Brunswick's death was caused by his taking cyanide of potassium, a deadly poison.   Hence there are but two alternatives:   (a) It was taken without knowledge on his part that he was taking the poison, which would constitute an accident within the meaning of the policy; or (b) That he took it knowingly, which would constitute suicide.   If the first alternative be true, then the defendant was liable beyond question for the full amount of the policy.   If the second alternative (suicide) be true then (even conceding that the defendant might limit or cut down its liability on account of suicide) under the above-mentioned term of the policy, the defendant would be liable for $250.   Hence, on the uncontroverted evidence, under the terms of the policy itself, there could be no general verdict for the defendant and the verdict should have been in favor of appellant either for the full principal sum (accident) or for $250 (suicide). (4) Instruction No. 2 given for respondent is erroneous in that there was no evidence to support it.   Gregmoore Orchard Co. v. Gilmour, 159 Mo. App. 218; Wann v. Scullin, 210 Mo. 486. The evidence

showed conclusively that Brunswick died from taking cyanide of potassium. Under the statute this constituted an accident within the meaning of the policy. Hence, there was no room for an instruction to the jury requiring it to find that Brunswick's act constituted an accident. Applegate v. Travelers Ins. Co., 153 Mo. App. 90; Harms v. Fidelity & Casualty Co., 172 Mo. App. 250; Whitfield v. Aetna Life Ins. Co., 205 U. S. 489; Logan v. Fidelity & Casualty Co., 146 Mo. 114. (b) Instruction No. 2 was erroneous, because said instruction is not the law. It told the jury that if deceased died because he took cyanide of potassium, yet there is no presumption in law that such act was accidental. This part of the instruction could have no effect other than to confuse and mislead the jury. (5) The presumption of law is against suicide, hence, that being the presumption, in the absence of evidence to the contrary, the question of suicide being excluded, there is but one alternative left and that is that the taking of poison was accidental. Richely v. Woodmen of the World, 163 Mo. App. 247; Newland v. Modern Woodmen, 169 Mo. App. 319; Norman v. Order of United Com. T., 163 Mo. App. 175; Voelker v. Hill-O'Meara Const. Co., 153 Mo. App. 1. (6) Even if it could be said that there was some evidence tending to show that Brunswick died because he intentionally took cyanide of potassium (suicide) yet, under the law, such intentional taking constituted an accident. Applegate v. Travelers Ins. Co., 153 Mo. App. 90; Harms v. Fidelity & Casualty Co., 172 Mo. App. 250; Whitfield v. Aetna Life Ins. Co., 205 U. S. 489; Logan v. Fidelity & Casualty Co., 146 Mo. 114; Knights Templar & Masons Life Indemnity Co. v. Jarman, 187 U. S. 197.

*Anderson, Gilbert & Hayden* and *M. U. Hayden* for respondent.

(1) If the record discloses that the evidence offered by appellant (plaintiff) wholly failed to establish that

she is entitled to recover or entitled to have her case submitted to the jury at all, then, the verdict of the jury having been in favor of respondent (defendant), there can be no error in any instructions given at the instance of the respondent which can be held to be reversible error. Wagner v. Electric Company, 177 Mo. 60; Bradley v. Forbes Tea Company, 213 Mo. 320; Trainer v. Mining Co., 243 Mo. 371. (2) It is elementary that the burden is upon the plaintiff, in any lawsuit, to prove the allegations of his petition. If he fails to prove those allegations or if he prove another and different theory than that pleaded, he is not entitled to recover. Reed v. Bott, 100 Mo. 62; Schneider v. Patton, 175 Mo. 723; Roden v. Helm, 192 Mo. 94. (3) The appellant averred in her petition that "the insured, William Brunswick, died, his death resulting directly, exclusively and independently of all other causes, from accidental bodily injuries from and caused by the said William Brunswick taking, on said day, poison known as cyanide of potassium." The burden was, therefore, imposed upon appellant to prove three facts: (a) that Brunswick did, in fact, take cyanide of potassium; (b) that he took it accidentally; and (c) that it caused his death. Laessig v. T. P. A., 169 Mo. 272; Norman v. Commercial Travelers, 163 Mo. App. 184; Bathe v. Insurance Co., 152 Mo. App. 94; Glover v. Henderson, 120 Mo. 367; Ranney v. Lewis, 182 Mo. App. 64; Berger v. Storage Co., 136 Mo. App. 42; O'Shea v. Lehr, 182 Mo. App. 693; Wright v. Commercial Travelers, 188 Mo. App. 463; Insurance Co. v. Vandecar, 86 Fed. 282; Taylor v. Insurance Co., 110 Iowa, 621; Carnes v. Traveling Men's Association, 106 Iowa, 281; Goodes v. Commercial Travelers, 174 Mo. App. 330; Vernon v. Traveling Men's Assn., 158 Iowa, 602; Traveler's Insurance Co. v. McConkey, 127 U. S. 666; Whitlatch v. Fidelity & Casualty Co., 149 N. Y. 45. (4) Where a case is tried upon the theory that the insured committed suicide and where evidence is offered by the plaintiff tending to prove that he committed suicide, there can be no application of the presumption

that the insured did not commit suicide. Laessig v. T.
P. A., 169 Mo. 272; Sowders v. Railroad Co., 127 Mo.
App. 124; Caldwell v. Traveling Men's Association,
156 Iowa, 327; Supreme Tent v. King, 142 Fed. 678.
(5) The instructions given to the jury, at the instance
of respondent, correctly stated the law in view of the
theory upon which appellant tried this case. Laessig v.
T. P. A., 169 Mo. 272; Reynolds v. Casualty Co., 201 S.
W. 1128; Lamport v. Aetna Life Ins. Co., 199 S. W.
1020.

FARIS, J.—This is an action by plaintiff as bene-
ficiary on a policy of insurance issued by defendant,
insuring one William Brunswick, the husband of plain-
tiff, against death by accident. Upon a trial by a jury,
the verdict was for the defendant. From the resulting
judgment plaintiff appealed to the St. Louis Court of
Appeals, wherein, upon a hearing, the case was re-
versed for error and ordered remanded for a new trial.
[See Brunswick v. Standard Accident Ins. Co., 187 S.
W. 802.] The Court of Appeals, however, being of the
opinion that the views announced by them in this case
were in conflict with the opinion of the Springfield
Court of Appeals in the case of Scales v. National Ins.
Co., 186 S. W. 948, made an order transferring the
case to this court, pursuant to the mandate of the Con-
stitution.   Hence, our jurisdiction.

The petition seems to be conventional. After aver-
ring formally the issuance of the policy, the petition sets
out substantially the conditions of the policy under
which the liability of defendant for accidental death of
the assured shall accrue. These conditions, as the peti-
tion and the policy recite them, are that liability accrues
in the event of the death of assured "resulting directly,
exclusively and independently of all other causes from
accidental bodily injuries." The policy contains, follow-
ing the above-quoted conditions, as to the cause of
death, an exception, to-wit: "Except when self-inflict-
ed while insane," *which is not set out, or in any wise re-*

*ferred to in the petition.* Continuing, the petition avers
that assured died on the 22nd day of April, 1913, and
that his death resulted "directly, exclusively and in-
dependently of all other causes from accidental bodily
injuries, from and caused by the said William Bruns-
wick taking on said day poison known as cyanide of
potassium." Other allegations are made as to additional
increments to the principal sum of $2500, arising, it is
averred, from annual renewals of the policy, and as to
damages and attorney's fees accruing from an alleged
vexatious refusal to pay. But these have no pertinence
to the points vexing us upon this appeal.

The answer of defendant, so far also as it is per-
tinent to the questions mooted here, was an admission
of the issuance of the policy and of the several annual
renewals thereof as pleaded, and a general denial of
each and every allegation (*sic*) contained in the petition.

The facts immediately surrounding the death of as-
sured are meagre, but as far as these facts are shown,
and so far as they are pertinent to elucidate the ques-
tions mooted on this appeal, run substantially thus:
Assured on the morning of his death seemed to be in
the best of health. He ate his breakfast just before
eight o'clock in the morning, and apparently was pre-
paring to go to his work. After breakfast he went into
the bed-room of plaintiff, who seems to have been ill,
and the latter tied his neck-tie for him. He then went in-
to a bed-room adjoining that of plaintiff. Some five
minutes afterward, hearing an unusual noise from this
room, plaintiff entered it and found assured lying on
the bed in a dying condition. His neck-tie and collar
had been removed. There were burns on his mouth and
cheek and hand—the latter seemingly from having
wiped his mouth with his hand. A glass and spoon
were found on the floor near the bed on which assured
was lying. While in this bed-room and a few minutes
before he was found dying, he was seen folding a
handkerchief. In a handkerchief which was found in his

pocket after his death were found some two or three ounces of cyanide of potassium. A can containing some two-thirds of a pound of cyanide of potassium was found in the bath-room.

The coroner, who was a physican, examined the body of assured some two hours after his death, and from the symptoms and the history of the case testified that assured came to his death from cyanide of potassium poisoning. The finding of the coroner's inquest that assured came to his death by suicide, caused by swallowing cyanide of potassium, was *offered by plaintiff*, but excluded by the trial court on *defendant's objection.*

It will be necessary to state other and omitted facts in the course of the discussion of the points made by plaintiff. These will be set out in connection with the point to which they are apposite.

I. Plaintiff insists that the verdict is against the evidence. This contention is bottomed on the fact that the contract of insurance contained a provision substantially to the effect that, if assured came to his death by suicide, while either sane or insane, the com-

**Trial Theory.** pany would pay the beneficiary one-tenth of the principal sum, that is to say $250. So, it is urged, since the death of the assured was unquestionably due either to accident or suicide, the verdict ought in any event to have been for at least the sum of $250.

It is enough to say upon this contention that the case was not tried below upon any such theory. Neither the pleadings upon either side, nor the instructions, nor the evidence, except the policy, contain the word suicide, and the policy has it only in the clause whereon the alleged right is bottomed to recover the lesser sum above-mentioned. Even in these days when the leaven of reform is working in all the law and the strife is toward a legal millenium, whereat every man shall be his own lawyer, one may not yet sue and cause the jury to be instructed upon one cause of action and then,

when cast, urge error, for that he was not permitted to recover upon a wholly different theory and upon a wholly different cause of action which he did not see fit even to mention till he came up to the appellate court. The rule which forbids this practice is that which requires the appellant to try his case in the appellate forum on the same theory upon which he tried it below. [Paramore v. Campbell, 245 Mo. 287; Linn County Bank v. Clifton, 263 Mo. 200.]

II. Complaint is made by plaintiff of the following instruction given for the defendant, to-wit:

"You are instructed that, even though you may find from the evidence that William Brunswick took cyanide of potassium, on the day of his death, and even though you may further find that his death was caused thereby, there is still no presumption in law that his act in taking said poison, if you find that he did take it, was accidental, or that his death resulted from accidental bodily injuries. On the contrary, the burden is upon plaintiff to prove that the death of said William Brunswick resulted, independently of all other causes, from accidental bodily injuries, and, unless she has proved such fact, she cannot recover, and your verdict must be for the defendant."

Presumption Against Suicide.

In condemnation of the above instruction plaintiff urges, (a) that it substantially tells the jury that death by suicide is not an accident; (b) that the burden was upon plaintiff to prove that the death of assured was caused by an accident, and (c) that if the jury should find that assured's death was caused by poison no presumption exists that such poison was taken accidentally. Taking the converse of each of the above propositions, plaintiff strenuously urges that the above instruction was erroneous as to all of them.

In resolving these contentions it is necessary to re-examine the facts, cursorily at least. By these facts we think the cause of assured's death is fairly well-

settled. For, while the evidence is upon some vexing points utterly lacking, we are yet convinced that enough is shown to justify a finding by the triers of fact that assured came to his death from taking poison; whether accidentally or intentionally swallowed, is another question and one presently reserved. For in addition to his sudden death and the burns upon his mouth, face and hand, which some of the witnesses say are characteristic effects of cyanide of potassium, crystals of this drug were found in a handkerchief in his pocket, and a can containing a large quantity thereof was found upon the premises. A few minutes before the death of assured he was seen to fold up a handkerchief, and, as stated, in a handkerchief after his death some two or three ounces of cyanide of potassium were found. A glass and spoon were found upon the floor near his body, which lay upon the bed, but whether containing evidences of recent use does not appear. The coroner, who is a physician, saw and examined the body of assured some two hours after his death, and as a result of that examination and the history of the case swore unequivocally that death was caused by cyanide of potassium poisoning. So, we think the postulates, of fact in the instruction was fully warranted by the evidence in the case, which clearly tended to prove that the death of deceased was caused by his swallowing cyanide of potassium.

The obvious inference arises, and in fact the testimony shows, that assured was fully cognizant of the deadly nature of cyanide of potassium. For the testimony is that only a few days before his death he had taken from his pocket crystals of some drug and in exhibiting these crystals to his partner in business had stated, in substance that it was cyanide of potassium and a deadly poison. No reason whatever for suicide is disclosed by the record; neither, on the other hand, are there any facts in evidence making for the theory of accidental taking of this poison. The assured is not shown to have been ill, or to have been intending to take

medicine, or even to have been in the habit of taking medicine. There is, as forecast above, no hint in the record, in either pleadings or proof, that assured was insane, or *non compos* to any degree. Therefore his sanity must be presumed.

Upon these meagre facts how stands the case upon the question of the correctness of the above instruction, and incidentally upon the right of plaintiff to recover at all on a contract of insurance against death "resulting directly, exclusively and independently of all other causes from accidental bodily injuries, except when self-inflicted when insane?"

In the light of the presumption in favor of sanity and the utter lack of any proof of insanity in the record, we go afield, in preserving the thread of our argument, to say that if assured took cyanide of potassium while insane his death was caused by an accident within the purview of the policy herein (Accident Ins. Co. v. Crandal, 120 U. S. 1. c. 531; Tuttle v. Iowa Association, 132 Iowa, 652; Grand Lodge v. Wieting, 168 Ill. 408; Blackstone v. Ins. Co., 74 Mich. 592; Berger v. Ins. Co., 88 Fed. 241) and the above-quoted clause of that policy which excepts liability for death self-inflicted while insane is rendered void by the express provision of Section 6945, Revised Statutes 1909, and *ceteris paribus* recovery could be had by the beneficiary (Logan v. Casualty Co., 146 Mo. 114; Whitfield v. Ins. Co., 205 U. S. 489).

If, on the other hand, assured *intentionally swallowed* cyanide of potassium, that is, if he committed suicide while sane, his death was not due to accident and his beneficiary can not recover under this policy, which bottoms the right to recover only for a death resulting from *accidental injuries*. [Williams v. Accident Assn., 133 N. Y. 366; Aetna Life Ins. Co. v. Vandecar, 86 Fed. 282; Tuttle v. Iowa Assn., 132 Iowa, 1. c. 654; Laessig v. Travelers' Assn., 169 Mo. 1. c. 280; Lamport v. Ins. Co., 199 S. W. 1. c. 1024.]

For in such case neither sound sense nor logic will permit us to hold that an act intentionally done by a sane man is an accident. Such a view would stultify common sense. Neither does Section 6945, supra, upon which plaintiff so confidently relies, aid at all or apply to the situation. The above section has nothing to do with the manner or cause of death. It leaves the parties perfectly free to contract *in an accident policy* touching the cause of death. If they see fit to contract that there shall be no liability except for a death resulting from an accidental injury, then the proof must show such a cause of death, before any recovery can be had on the contract. In other words if the proof, even where aided, in a proper case, by the presumption against suicide, yet shows suicide by assured while sane, the plaintiff has simply failed to meet the burden expressly assumed in the insurance contract of proving the death of assured by accident.

In case of insurance effected upon life by the usual life insurance policy, *the fact of death*, since such fact is the sole condition precedent to recovery, is *alone pertinent*, and Section 6945, supra, applies automatically to all cases of death by suicide, regardless of whether the assured was sane or insane at the time he killed himself, barring of course, the exception noted in the statute itself. But where the assured solemnly contracts in an accident policy that liability for his death accrues only when the cause of death shall be an accidental injury, nothing seems clearer than that Section 6945, supra, has no application; unless, as already stated, assured shall commit suicide while insane. In the latter event the death, being unintentional, is held to be accidental, and though suicide is expressly excepted by the policy, recovery can be had because of the saving provisions of said Section 6945.

Upon this phase, therefore, we conclude that the burden was upon plaintiff to prove that the death of assured resulted from accidental injuries, that is, that it was due to an accident. That such burden may some-

Brunswick v. Ins. Co.

times be aided by a presumption against suicide (which presumption we discuss below) does not in our view affect this phase of the situation. This is so for the reason, if for no other, so clearly set forth in the case of Laessig v. Travelers' Assn., 169 Mo., at page 280, where it was said:

"In other words, the contract of accident insurance primarily casts the burden upon the plaintiff to show that the death was accidental. It must be so pleaded and proved. If the defendant wants to avoid liability for an accidental death it must prove that the death was due to a cause excepted from the operation of the policy; that is, that it was a suicide. In such cases there is no presumption of law that because the death was not due to suicide it was accidental. For it might not be due either to suicide, or accident. It might be natural. In such case, the defendant would fail in its contention that it was suicide, and plaintiff would fail in his case because the death was not due to accident, and the contract only insured against accidental death. In fact, if there was no plea of suicide, the plaintiff would have to prove accidental death. There would be no presumption of accidental death. The jury must determine the fact as to what caused the death. There need not necessarily be direct proof or evidence of the cause. The cause may be found by the jury from facts and circumstances. But the cause of death is a fact for the jury. There is no presumption of law in such cases, further than the presumption against suicide; but even this presumption does not carry with it, in accident insurance cases, the further presumption that the death was accidental."

When examined in the light of the facts and the points mooted and respectively held in judgment therein, neither the case of Logan v. Ins. Co., 146 Mo. 114, nor the case of Whitfield v. Aetna Ins. Co., 205 U. S. 489, militates conclusively against this view. This is so, because in the Logan case the defense was "that the death of said assured was caused while either

sane of insane, in either of which events defendant was not liable." The precise concrete question up for judgment under this defense as that point was stated by the court in the Logan case was: "Is suicide in this State a valid defense to an action upon a policy of insurance issued by an accident insurance company, containing provisions such as the one in controversy, where it is not shown that the insured contemplated suicide at the time he made his application for the policy— and it being admitted that the assured afterwards came to his death from external, violent and accidental means?" Under these defenses and the above admission it was competent for this court to find and conclude that assured was insane when he committed suicide. If he was insane, his death, as we have already seen, was accidental and the right to recover unquestionable. In fact, *the above admission concedes that his death was caused by accidental means;* so if he died by suicide, such suicide in order to be in harmony with this solemn admission, must have occurred while assured was insane. Therefore, the Logan case is in no respect out of harmony with our views herein.

In the Whitfield case the question whether the death was accidental and whether the burden of proving the cause of death to have been on this phase within the terms of the policy was not discussed. The defendant in the Whitfield case specifically pleaded suicide as a defense. The Supreme Court of the United States held that there could no longer be such a defense made, because forbidden by Section 6945, Revised Statutes of Missouri of 1909. The burden resting upon the plaintiff to prove a cause of death falling within the contract of insurance, i. e., an accidental death was not adverted to by the court; it seems to have been tacitly assumed by the court that the death was accidental, although the reply of plaintiff in effect admitted that the assured therein was sane when he killed himself. It is regrettable that it was not pointed out wherein the language of said Section 6945 had the effect to create

by its terms a cause of action, when none theretofore existed under the policy and upon the conceded facts. This section is short and fairly simple and reads thus: "In all suits upon policies of insurance upon life here-after issued by any company doing business in this State to a citizen of this State, it shall be no defense that the assured committed suicide unless it shall be shown to the satisfaction of the court or jury trying the cause that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void." [Sec. 6945, R. S. 1909.]

While the above section makes absolutely void all stipulations exempting liability on account of suicide and all defenses bottomed on the fact of suicide, yet it nowhere relieves the plaintiff *in an action upon a policy of accident insurance* from making proof that the death of the assured was caused by an accident. In short, as forecast above, the section does not write into *an accident policy* a cause of action where none existed upon the facts. Granting for the sake of argument that the section (the applicability of which to accident policies, though now fairly well-settled, has been strenuously and ably combatted and denied) could have gone further and provided that "suicide by a sane person shall be deemed to be an accident;" it is enough to say that it does not so provide. If the Legislature desired to create a cause of action upon a *policy of accident insurance* where none existed within the obvious meaning of the plain language of such contracts it would have been easy to say so. Therefore, unless the courts are able to say that a death by suicide of a sane person is a death by accident, further legislation would seem to be called for. There are no cases up to the present time so holding. Both the reason of the thing and the cases are the other way. [Williams v. Accident Assn., 133 N. Y. 366; Aetna Life Ins. Co. v. Vandecar, 86 Fed. 282; Tuttle v. Iowa Assn., 132 Iowa, l. c. 654; Laessig

v. Assn., 169 Mo. 1. c. 280; Lamport v. Ins. Co., 199 S. W. 1. c. 1042.]

Neither does the view we here announce conflict with the rule in Fetter v. Ins. Co., 174 Mo. 1. c. 269. The latter case at most merely deals with the burden of adducing evidence. When the plaintiff has shown that assured died from cyanide of potassium poisoning self-administered, then the inevitable inference arose that death was caused by either accident or suicide, and plaintiff could not recover if the evidence (aided by the presumption against suicide) yet showed suicide till there was further evidence adduced showing that such suicide was committed while assured was insane.

We have here referred to, but left out of discussion or consideration, the effect and nature of the presumption against suicide, elsewhere fully discussed in the expression of our views. And so we conclude that under the rules defining and delimiting *stare decisis* as that rule is announced in the case of State ex rel. Bixby v. St. Louis, 241 Mo. 231, the instant case may be, to the extent stated, distinguished from the Whitfield, Logan and Fetter cases, supra. If under this rule it be impossible to distinguish the Whitfield case (there are no difficulties as to the others) then we may content ourselves with saying that it is not binding on us in any respect, but at most only persuasive as the utterance of a great court, unfamiliar however, with many of the intricacies of our local statutes and rulings thereon.

But having shown that assured came to his death from swallowing cyanide of potassium, the inference, naught else appearing, that the act of swallowing this poison was either accidental or intentional, i. e., suicidal, inevitably arose. In such case and after such showing was it proper to instruct the jury that "there is still no presumption in law that his (assured's) act in taking said poison was accidental?" It was clearly improper as an abstract proposition. Whether it was reversible error here, upon the concrete case made, depends upon whether there is upon the facts any room for the

presumption, i. e., whether suicide was not so conclusively shown as to eliminate any presumption.

Discussing this presumption and its effect, a majority of this court in the late case of Reynolds v. Casualty Co., 274 Mo. l. c. 96, said: "No legal proposition is more firmly established than that where the act which caused the death may be either accidental or suicidal the burden is upon the insurer to establish the. fact of suicide by a preponderance of the evidence, for the presumption arising from the love of life, which is created for its preservation, is, like every natural law, always within the contemplation of the courts. It follows, as is stated by Mr. Bacon in his work on Life and Accident Insurance (4 Ed.), sec. 438, that: 'When circumstantial evidence, only, is relied on, the defense fails unless the circumstances exclude with reasonable certainty any hypothesis of death by accident, or by the act of another.' [Boynton v. Assurance Society, 105 La. 202; Shotliff v. Modern Woodmen, 100 Mo. App. 138; Norman v. United Commercial Travelers, 163 Mo. App. 175; Almond v. Modern Woodmen, 133 Mo. App. 382; Claver v. Woodmen of the World, 152 Mo. App. 155; Hunt v. Ancient Order of Pyramids, 105 Mo. App. 41; Home Benefit Assn. v. Sargent, 142 U. S. 691; South Atlantic Life Ins. Co. v. Hurt's Admx., 79 S. E. (Va.) 401; Life Ins. Co. v. Koegel, 104 Va. 619; Pagel v. Casualty Co., 158 Wis. 278; Huestis v. Ins. Co., 155 N. W. (Minn.) 643; Kornig v. Indemnity Co., 102 Miss. 31; Jenkin v. Life Ins. Co., 131 Cal. 121; Insurance Co. v. Nitterhouse, 11 Ind. App. 155; Insurance Co. v. Milward, 68 L. R. A. 285.]

"These cases, and many others to which our attention has been directed, amply sustain the doctrine stated in the proposition we have quoted from Mr. Bacon's excellent book. In the Kornig case, supra, the court states it more fully as follows: 'Where the defense of suicide is asserted against an action by a beneficiary on an insurance policy (a) the burden of proving that the deceased committed suicide is upon the defend-

ant; (b) the presumption is against suicide; (c) if the known facts are consistent with the theory of natural or accidental death, the presumption which the law raises from the ordinary motives and principles of human conduct requires a finding against suicide; (d) when circumstantial evidence is relied on, the defendant must establish facts which exclude any reasonable hypothesis of natural or accidental death.'

"It is a doctrine that appeals to every just and reasonable mind. It does not relieve the plaintiff from the burden of proving accidental death by a preponderance of evidence as a condition of recovery but requires that when he has put in evidence circumstances which prove that the death was either accidental or suicidal, the unreasonableness of the theory of suicide must receive due consideration in weighing it against the more reasonable and natural theory of accident."

While the writer sharply disagreed with the judgment and with much that was said in the Reynolds case, yet since a majority of this court *en banc* ruled contrary to his views he is constrained by the view which he entertains of his duty under the Constitution to adopt as the law and follow the opinion of the majority.

The presumption against suicide is a rule of law deduced from convenience and necessity; it is based on the well-nigh universal human characteristic of love of life and fear of death, and it arises in a case whenever the cause of death is in issue and the evidence discloses a state of facts consistent with either accident or suicide. While the doctrine is a veritable presumption of law, it is sometimes and in some of the cases loosely spoken of as a presumption or inference of fact, and is put in the category of evidence. While a few authorities assert the converse, by far the better view is that it is not evidentiary in character; yet when invoked in the trial of a case, in a way as a constituent of evidence, it undoubtedly accomplishes a function of evidence, *pro hac vice*. It is to be invoked, or automatically rises, to be exact, when there is no convincing

evidence for or against suicide, and in such case, perforce this presumption alone, a finding in favor of accidental death will be upheld. [Fitzgerald v. Barker, 85 Mo. l. c. 22.] The evidence for or against the fact may be either direct or circumstantial. If the evidence in favor of suicide is wholly circumstantial, then it ought to be. such and of such weight as to negative every reasonable inference of death by accident. [Prudential Ins. Co. v. Dolan, 46 Ind. App. 40; Agen v. Ins. Co., 105 Wis. 217; Richey v. Ins. Co., 163 Mo. App. 235.] In the case of Agen v. Ins. Co., supra, at page 218, in a syllabus by the writer of the opinion, the Supreme Court of Wisconsin sets out the converse of the rule we announce and thus negatively endorses the correctness of that rule, thus: "Where the reasonable probabilities from the evidence all point to suicide as the cause of death, so as to establish it in the light of reason and common sense with such certainty as to leave no room for reasonable controversy on the subject, a jury should not be permitted to find to the contrary, and have such finding stand as a verity in the case, but the question should be decided by the trial court as one of law."

If there is evidence both for and against suicide the presumption (unless, as some of the cases hold, and the reason of the thing makes plausible, the evidence be equally balanced) has no place in the reasoning, as its very nature indicates; if therefore invoked, or present, it vanishes and the question is to be thereupon resolved upon the evidence. [9 Encyc. Ev. 885, and cases cited.] Obviously, the presumption against suicide cannot continue to exist in the face of evidence showing suicide, for such a view would be utterly subversive of the well-settled doctrine, figuratively but strikingly announced by LAMM, J., substantially, to-wit, that presumptions are the bats of the law which the light of evidence frightens and causes to fly away. [Mockowik v. Railroad, 196 Mo. l. c. 571.] Not only do the cases and the textbooks sustain this view (Er-

hart v. Dietrich, 118 Mo. 418; State v. Swearingen, 269 Mo. 186; Mockowik v. Railroad, supra; Galpin v. Page, 85 U. S. 350; Diefenthaler v. Hall, 96 Ill. App. 639; Largen v. State, 76 Tex. 323; Conway v. Supreme Council, 137 Cal. 384; Jones v. Bond, 40 Fed. 281; Cunningham v. State, 56 Miss. 269; Keller v. Over, 136 Pa. St. 1; Adams v. Slate, 87 Ind. 573; Myers v. Kansas City, 108 Mo. 480; 2 Chamberlayne's Mod. Law of Ev. 1085; Lawson on Presump. Ev. 242; 9 Encyc. of Ev. 885; Bates v. Pricket, 5 Ind. 22; 4 Wigmore on Evidence, 2495-2511; Winter v. Supreme Lodge, 96 Mo. App. 1); but the very legal nature of the rule of law, which we call a presumption, demonstrates it. For in the very last analysis this rule of law which we call a presumption, operates, when it arises in the case as the result of evidence adduced, only in two ways: (a) It either forecloses the question, unless and until further evidence is offered by the other side; or (b) it shifts the burden of the evidence to the adverse side; that is all it does in the case. [In re Banbury Peerage, 1 Sim. & S. 153; Pickup v. Thames etc. Ins. Co., 3 Q. B. D. 594; Davis v. United States, 160 U. S. 469; State v. Hoyt, 47 Conn. 518; Dacey v. People, 116 Ill. 555; Jones v. Ins. Co., 90 Me. 40; Holmes v. Hunt, 122 Mass. 505; People v. Garbutt, 17 Mich. 9; Marshall Livery Co. v. McKelvey, 55 Mo. App. 240; Blodgett v. Cummings, 60 N. H. 115; Brotherton v. People, 75 N. Y. 159; Clark v. Hills, 67 Tex. 141; Thayer, Prelim. Treat. on Ev. 336.] Should this burden not be met, and should no other and countervailing evidence be adduced, the presumption will have the effect to conclude the question in favor of the side upon which the presumption operates. [State v. Jones, 64 Iowa, 349; Lisbon v. Lyman, 49 N. H. 563; Succession of Tighlman, 7 Rob. 387; Kidder v. Stevens, 60 Cal. 414; Cunningham v. State, 56 Miss. 269; Fitzgerald v. Barker, 85 Mo. 13; 2 Chamberlayne's Mod. Law of Ev. 1085.]

Therefore, it obviously follows that such a presumption is not evidence, but that it is a mere term

in legal nomenclature, employed to designate the imperative duty, or burden upon the side against which the presumption operates, of producing evidence to rebut the finality of the legal conclusion which arises, in the course of a trial of a case, from the proof of other facts therein. [9 Encyc. of Ev. 885; 4 Wigmore on Ev. 2490-2511; Allen v. United States, 164 U. S. 1. c. 500; 2 Chamberlayne's Mod. Law of Ev. 1175a; Thayer, Prelim. Treatise on Ev. 314-339; Lisbon v. Lyman, 49 N. H. 563; State v. Jones, 64 Iowa, 349; Wooten v. State, 24 Fla. 335; State v. Hudspeth, 159 Mo. 178; State v. Pike, 49 N. H. 399; Moore v. Renick, 95 Mo. App. 202; Rousseau v. American Yeomen, 186 Mich. 1. c. 105; Lincoln v. French, 105 U. S. 614; 1 Elliott on Evidence, 94; Prudential Ins. Co. v. Dolan, 46 Ind. App. 40; Board Commrs. v. Robbins, 82 Conn. 623; Warner v. Warner, 235 Ill. 448; Jenkins v. Railroad Co., 105 Minn. 504; Peters v. Lohr, 24 S. D. 605; First Nat. Bk. v. Adams, 82 Neb. 801; Atchison, etc., Railroad v. State, 23 Okla. 210; Ryan v. Railroad, 151 Pac. 71; Purdy v. State, 86 Neb. 638; Savage v. Rhode Island Co., 28 R. I. 391; Agnew v. United States, 165 U. S. 36; State v. Kennedy, 154 Mo. 268; McDuffee v. State, 55 Fla. 125.]

As stated above, if there is among the facts in evidence in this case any room or place for the presumption, the instruction above set out was, on this phase erroneous. That is to say, if it cannot be said by us as a court, that as a matter of law the facts and circumstances proved show suicide and exclude any reasonable hypothesis of accident (Prudential Ins. Co. v. Dolan, 46 Ind. App. 40; Agen v. Ins. Co., 105 Wis. 217; Richey. v. Ins. Co., 163 Mo. App. 235), then the instruction, which was, as we have already demonstrated, *abstractly* bad, was here, also *concretely* bad. Defendant put in no evidence whatever. Save and except the proved facts that a few minutes before assured was' found in a dying condition due to his taking cyanide of potassium, he was seen to fold up a handkerchief; that after his death a large quantity of this poison was found in a

handkerchief in his pocket; that he had had this poison in his pocket for several days and knew what it was, and he knew its deadly nature, there are no affirmative facts in the record to show suicide. Was this evidence sufficient to overcome as a matter of law the presumption against suicide, and enable the court to say as a matter of law that suicide and not accident was the cause of assured's death? If it was sufficient to overcome this presumption, then the court below ought to have sustained the defendant's demurrer to the evidence and the bad instruction in such case would, of course, cut no figure; since in such event the only possible result under the law and the evidence was reached by the jury.

While the point is close and difficult, we are yet constrained to say, perforce the ruling in the Reynolds Case, supra, that the facts proven and which tend to show suicide are not sufficient to exclude every reasonable hypothesis favoring accident, and there is left, on account of the presumption against suicide, an inference of accident sufficient to take the case to the jury. If it ought as a matter of law to have gone to the jury at all, then it is elementary that it ought to have gone to the jury under proper instructions. It results that the giving of Instruction Two constituted reversible error. Let the case be reversed and remanded for a retrial not inconsistent with what we have herein ruled.
All concur.

PER CURIAM:—The foregoing opinion by FARIS, J., in Division is adopted by the Court in Banc. All concur, except *Woodson, J.,* who dissents; *Bond, C. J.,* not sitting.