Myers, J.
 

 This is a workmen’s compensation case. Charles Harry Mitchell, a night watchman, died from a bullet wound received on the premises of his employer. His widow, Lillie Mitchell, on behalf of herself and her minor children, filed an application with
 
 *111
 
 the Industrial Commission for an award which was denied. Thereupon she filed this action on appeal in the Court of Common Pleas. The jury found in favor of claimant and judgment was entered on the finding. The Industrial Commission appealed the cause to the Court of Appeals, assigning as errors, first, the finding that there was a causal connection between decedent’s employment and the injury, and, second, the exclusion of certain evidence. The Court of Appeals affirmed the judgment. This court granted a motion to certify the record.
 

 Under. Section 1165-68, General Code, compensation may not be had if the injury causing death was purposely self-inflicted. Appellant contends that the bullet wound causing Mitchell’s death was purposely self-inflicted and by reason thereof the Court of Common Pleas should have directed a verdict in its favor. A motion for a directed verdict for the Industrial Commission was made at the close of claimant’s evidence and again at the close of all the evidence. Both motions were overruled by the trial court.
 

 Charles Harry Mitchell was a night watchman employed to patrol the plant of The Edwards Manufacturing Company in Cincinnati, consisting of three buildings, one of which was an office building. In addition to watching for prowlers Mitchell was required to look for open windows and to make sure that all doors were locked. The company furnished him with a revolver and a lantern. In making the rounds of the plant he was required at scheduled times to pull certain box alarms, whereby signals were communicated to and registered in the office of The American District Telegraph Company, which company checked the regularity of such calls as a service to the employer.
 

 On July 3, 1935, Fred O’Connor, the night manager of the telegraph company, not having received the midnight box alarm signal, went to the plant of The
 
 *112
 
 Edwards Manufacturing Company to investigate. Finding the doors all locked he called the police with whose help he succeeded in .gaining entrance into the office building by means "of a window. After a search of the building Mitchell was found unconscious just inside the entrance to the ladies wash room with a bullet wound over the right temple about one and three-fourths inches above the lobe of the right ear. The point of exit of the bullet was about the same distance above the lobe of the left ear. The bullet traveled in almost a horizontal course. The lights were burning in the wash room. A bundle of towels was found at the decedent’s feet and his lantern was lying on its side about six or eight feet away. His night keys were found close by on the floor. The revolver, with four loaded cartridges and one discharged shell, was under the body. Evidence of a ballistic expert was to the effect that the fatal wound was caused by a bullet from the revolver carried by the decedent.
 

 Arthur A. Long, auditor of The Edwards Manufacturing Company, the employer, testified that Mitchell carried the revolver and flash light lantern in his work. Long stated that on the night in question he had been called on the telephone and upon arriving at the plant he saw blood in the wash room spattered over the floor between the sink, the doorway and the first wash stand. He also testified that three or four days previously Mitchell had reported to Mr. Edwards that some persons were trying to break into the building just south of the office and that he shot at them out of the window.
 

 Evidence regarding possible powder burns around the wound of entrance in the right temple of the decedent was conflicting. Dr. Hilsinger, an assistant coroner, on behalf of the commission testified that the marks around the wound were powder burns, while the widow and the funeral director both testified to the contrary. The testimony of the widow was also to
 
 *113
 
 the effect that when Mitchell left for his work prior to the time of his death he was in the best of spirits, that he was in perfect health and never said or did anything that would1 indicate he contemplated suicide. Such, in substance, was the evidence introduced at the trial. The instrumentality with which the decedent came to his death had been furnished by his employer. It was used by him in his work as a night watchman. He was found in the building which he was required to watch. When found, he was unconscious with a bullet wound from which he died seven hours later. The position of the bundle of towels at his feet, the blood spattered over the floor, the lantern on its side about six feet away as well as the revolver under his body, all indicate some confusion at the time of the infliction of the fatal wound. As far as the record shows, no one knows how Mitchell came to his death.
 

 In such a situation was it the duty of the trial court to grant the motions of the Industrial Commission for a directed verdict in its favor? To do so it would have been necessary to rule as a matter of law that the bullet wound causing Mitchell’s death was purposely self-inflicted. So to rule, the trial court would have been obligated not only to disregard the conflicting evidence in respect to possible powder burns, but also the evidence as to some confusion at the time of the infliction of the wound.
 

 The presumption against suicide is not a rigid, arbitrary rule of law. There is a sharp conflict of authority on the question. A number of courts take the view that this presumption is not evidence, and does not of itself possess any probative force. 103 A. L. R., 186. The following cases are cited in support of such view:
 
 Del Vecchio
 
 v.
 
 Bowers
 
 (1935), 296 U. S., 280, 80 L. Ed., 299, 56 S. Ct., 190;
 
 Jefferson Standard Life Ins. Co.
 
 v.
 
 Clemmer
 
 (C. C. A. 4), 79 F. (2d), 724;
 
 Brunswick
 
 v.
 
 Standard Acc. Ins. Co.
 
 (1919), 278 Mo., 154, 213 S. W., 45, 7 A. L. R., 1213;
 
 Griffith
 
 v.
 
 Continental Casualty
 
 
 *114
 

 Co.
 
 (1923), 299 Mo., 426, 253 S. W., 1043;
 
 Watkins
 
 v.
 
 Prudential Ins. Co.
 
 (1934), 315 Pa., 497, 173 A., 644, 95 A. L. R., 869;
 
 Woodmen of the World
 
 v.
 
 Alexander
 
 (1922; Tex. Civ. App.), 239 S. W., 343.
 

 Other courts have adopted the view that the presumption against suicide is in the nature of evidence to be submitted to and weighed by the jury in connection with the other evidence in determining the issue of suicide. 103 A. L. R., 191. In
 
 Provident Life & Acc. Ins. Co.
 
 v.
 
 Prieto
 
 (1935), 169 Tenn., 124, 83 S.
 
 W.
 
 (2d), 251, the court stated:
 

 “Where a death by external and violent means is shown, and there is no proof as to how it was caused, or the attendant circumstances leave the question doubtful, or the proof concerning them is conflicting or not inconsistent with accident, the law presumes an accidental death,-and the burden of proof, in its secondary sense, is cast on the defendant, and requires it to prove by a fair preponderance
 
 [sic]
 
 of the evidence that death was caused by suicide.
 

 ‘ ‘ This presumption is not displaced by proof of circumstances which merely tend in a greater or less degree to show suicide, but in such ease it is a question for the jury whether they overturn the presumption.
 

 “Where there is no proof indicating either accident or suicide in case of a death by external violence, or where the proof is equally balanced, or is conflicting, this presumption comes to the aid of the plaintiff, in making out his or her case.”
 

 Supporting this view see the following cases:
 
 Accident Ins. Co.
 
 v.
 
 Bennett
 
 (1891), 90 Tenn., 256,16 S. W., 723, 25 Am. St. Rep., 685;
 
 Brown
 
 v.
 
 Sun Life Ins. Co.
 
 (1899; Tenn.), 57 S. W., 415, 51 L. R. A., 252, discussed at length in
 
 Provident Life & Acc. Ins. Co.
 
 v.
 
 Prieto, supra.
 
 Touching the same question see
 
 Connell
 
 v.
 
 Iowa State Traveling Men’s Assn.
 
 (1908), 139 Iowa, 444, 116 N. W., 820;
 
 Mutual Life Ins. Co.
 
 v.
 
 Maddox
 
 
 *115
 
 (1930), 221 Ala., 292, 128 So., 383;
 
 New York Life Ins. Co.
 
 v.
 
 Beason
 
 (1934), 229 Ala., 140, 155 So., 530.
 

 In
 
 Tackman
 
 v.
 
 Brotherhood of American Yeoman
 
 (1906), 132 Iowa, 64,106 N. W., 350, 8 L. R. A. (N. S.), 974, the court stated that “the instinct of self-preservation and love of life is so pervading an element of human nature that the presumption always obtains against self-destruction, and this presumption is to be treated as evidence in the case.”
 

 In the instant case the evidence before the court showed that the instrument with which the decedent came to his death had been furnished by his employer. It was used by him in his work as a night watchman. There was some evidence of disorder and confusion. There was no motive for suicide shown. Mitchell was found in the building which he was required to watch. With such evidence pointing in the direction of an accidental death, an issue for the jury was presented in the instant case. There was other evidence strongly indicating suicide — the fact that the doors of the building were all locked, that there were four loaded cartridges in the revolver and one empty shell, that the.bullet causing the fatal wound came from the same revolver, that the bullet traveled in an almost horizontal direction, and that Mitchell’s body was almost under a wash stand where there was a mirror. All of these circumstances, while possessing considerable probative force, nevertheless were not of such a convincing character as to warrant the court taking the issue from the jury.
 

 In
 
 Wallace J. Moriarty’s Case,
 
 126 Me., 358, the facts were somewhat similar to the instant case. There, also, the widow applied for workmen’s compensation by reason of the death of her husband, Moriarty, a policeman of the city of Lewiston. Soon after going on duty Moriarty was found in the toilet of the Maine Central Railroad station with a bullet wound in his neck, which two days later proved fatal. The
 
 *116
 
 railroad station was at a terminus of bis beat. When found in tbe toilet he was sitting on tbe floor with bis back against tbe fastened door. He bad been shot in tbe left side of bis neck. Beside him was bis revolver. It does not appear whether any chamber in tbe revolver was empty. Tbe Supreme Court of Maine, in affirming tbe award for compensation, stated that “it cannot be said as a matter of law that Mr. Moriarty willfully intended to bring about tbe injury which caused bis death.” Nor in tbe instant ease may it be said as a matter of law that tbe bullet wound causing tbe death of Charles Harry Mitchell was purposely self-inflicted. There was no error in tbe action of tbe trial C9urt in overruling tbe two motions made by appellant for a directed verdict.
 

 Nor do we find any error in tbe refusal of tbe trial court to permit tbe assistant coroner to answer tbe following question: “Now, Doctor, taking into consideration tbe powder marks that you observed at tbe point of entrance, or tbe wound of entrance, and tbe angles or course of tbe wound, and tbe wound at tbe point of exit, do you have an opinion as to whether or not this wound itself was self-inflicted?” Tbe court properly sustained tbe objection for tbe reason that such question was an ultimate issue for tbe jury. “Tbe opinion evidence rule has never been so relaxed as to permit an opinion to be given on tbe precise ultimate fact in issue which is to be determined by tbe jury. Not even expert testimony is admissible for such purpose.” 17 Ohio Jurisprudence, 447, Section 352. See also
 
 Ohio & Indiana Torpedo Co.
 
 v.
 
 Fishburn,
 
 61 Ohio St., 608, 56 N. E., 457, 76 Am. St. Rep., 437;
 
 Fowler
 
 v.
 
 Delaplain,
 
 79 Ohio St., 279, 87 N. E., 260, 21 L. R. A. (N. S.), 100.
 

 Tbe judgment of tbe Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Day, Zimmerman, "Williams and Hart, JJ., concur.