CHICAGO—FIRST DISTRICT—DECEMBER, 1912.   511

Bernick v. Illinois Commercial Men's Ass'n, 175 Ill. App. 511.

## Anna Bernick, Appellant, v. Illinois Commercial Men's Association, Appellee.

## Gen. No. 16,809.

1. INSURANCE—*burden of proof.* In an action on a certificate of insurance against accidental death, if the only question is whether death was accidental, the burden of proof is on plaintiff to show that the injury was not self-inflicted.

2. EVIDENCE—*presumption that men are sane and avoid death rebuttable.* In an action on a certificate of insurance against accidental death the presumption that all men are sane and avoid injury and death may establish, *prima facie,* in the absence of proof to the contrary, that the injury which caused death was not self-inflicted, but such presumption is rebuttable.

3. INSURANCE—*when suicide shown.* Verdict is properly directed for defendant in an action on a certificate of insurance against accidental death where the only reasonable conclusion from the position of the body on a bed in a locked room of a bath parlor after an attendant had thought he had heard a shot from such room, the manner in which a revolver, one chamber of which was discharged, was held, the location and character of the wound and an indentation in the wall, is that death was self-inflicted.

Appeal from the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed December 11, 1912. *Certiorari* denied by Supreme Court (making opinion final).

EDWIN C. CRAWFORD and JOHN D. SULLIVAN, for appellant.

JAMES MAHER, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit by appellant against appellee instituted in the Municipal Court to recover $5,000 upon a certificate of insurance against accidental death, issued by appellee to John P. Bernick, the husband of appellant. At the close of the evidence for appellant a

peremptory instruction tendered by appellee was re-
fused by the court, but at the close of all the evidence
the court gave to the jury a peremptory instruction
then tendered by appellee, and upon the directed ver-
dict finding the issues for appellee, judgment was en-
tered against appellant for costs.

The sole question involved is whether the evidence,
together with all reasonable inferences deducible there-
from, considered most favorably for appellant, war-
ranted the court in instructing the jury that appellant
had failed to show that the death of the insured re-
sulted, independently of all other causes, from bodily
injuries received through external, violent and acci-
dental means.

The facts are not controverted. At the time of his
death on May 12, 1909, John P. Bernick was 36 years
of age and resided with his wife and three children in
St. Joseph, Minn. His domestic relations were free·
from trouble. He was and had been for about six
months a traveling salesman for a wholesale liquor
dealer with headquarters in St. Paul. He had succes-
sively been constable and village marshal in St. Jo-
seph, and deputy sheriff and sheriff of Stearns county.
On May 10th he stopped at his home in St. Joseph a
few hours, while on his way to St. Paul, and gave his
wife $40. He then had, as it appeared to her, $200 or
$300 in bills. After leaving St. Joseph for St. Paul
on May 10th, the evidence does not disclose his where-
abouts until about 11 o'clock on the night of May 11th,
when he, together with two young men whom the at-
tendant did not know, appeared at Debach Bros. bath
parlors in St. Paul. Bernick and his companions then
had a turkish bath, after which each retired to a sep-
arate small room or apartment in which was a cot or
small bed, to remain during the night. Burnick was
not observed again until about 7 o'clock in the morn-
ing, when he was given an alcohol rub by the attend-
ant, after which he told the attendant he wanted to lie
down a little longer. When Paul E. Conley, the day

attendant, arrived, he noticed a call marked on the board for Bernick at 10 o'clock, and at that time he opened the door of Bernick's room and saw him lying on the bed on his right side, beneath the covers, with his head exposed upon the pillow and his eyes open. Conley then told Bernick it was 10 o'clock, whereupon Bernick thanked him, and Conley shut the door, which closed with a spring lock, and left the room. About half an hour thereafter Conley heard a shot which he thought proceeded from the room occupied by Bernick, and immediately went to the door of the room where he listened and "heard a trickling sound as if liquid was running." He then unlocked the door and saw Bernick with his underclothes on lying on his left side upon the bed wih his head toward the foot of the bed, the posterior part of his body about the center of the bed, his feet and legs below the knees extending over the side of the bed, his right hand grasping the butt of a revolver which was resting on the right side of his body with the muzzle turned upward, and the fingers of his right hand slowly relaxing. The cartridge in one chamber of the revolver had been discharged and the other chambers were loaded. A bullet had entered Bernick's right temple about midway between the upper attachment of the ear and the outer margin of the eye and emerged from the left temple at a point slightly above the point where it had entered the right temple. The flesh on the right temple was lacerated, seared and powder burned. In the wall of the room, at a point about on a line with the head of Bernick, if he had been sitting on the bed when the shot was fired, was a fresh indenture apparently made by a bullet, which was found in the room. Bernick's clothes were found hanging in the room and a search disclosed that he had only thirty-nine cents. He habitually carried a revolver which upon retiring for the night he placed under his pillow, and which one witness testified, he handled so carelessly that the witness had frequently warned him of the danger of so doing.

Where, as in the case at bar, the only question involved is whether the injury which caused the death of the insured was accidental or self-inflicted, the burden of proof is cast upon the plaintiff to show that such injury was accidental and not self-inflicted. Fidelity & Casualty Co. of New York v. Weise, 182 Ill. 496; Wilkinson v. Aetna Life Ins. Co., 240 Ill. 205.

While the legal presumption that all men are sane and are prompted by the natural instincts of self-preservation to avoid injury and death, may, in the absence of proof to the contrary, establish *prima facie* that the injury which caused death was not self-inflicted, such presumption is rebuttable by proof and by the circumstances in evidence surrounding the death. Wilkinson v. Aetna Life Ins. Co., *supra*.

The coroner's certificate of his official investigation of the cause of the death of the insured states that the insured "met his death by gunshot wound (suicide)."

Upon the uncontroverted evidence and circumstances appearing in evidence the only reasonable conclusion to be deduced is that the injury which caused the death of the insured was self-inflicted and not accidental.

The position in which the body of the insured was found upon the bed, the manner in which the revolver was held by the insured and its position upon and against his body, the location and character of the wound, the course taken by the bullet and the location in the wall of the indenture made by the bullet, all unmistakably tend to show that, while sitting upright upon the bed with his legs projecting over the side of the bed, he directed the muzzle of his revolver horizontally towards and nearly against his right temple and so fired said revolver, and that the wound or injury made by the bullet was self-inflicted and not accidental.

A supposition is indulged in by counsel for appellant that the insured on May 11th turned over to his employer in settlement of the collections made by him,

the money shown to have been in his possession on May 10th, but such supposition is not substantiated by proof which must have been available to appellant, if it existed.

The peremptory instruction was not improperly given to the jury and the judgment is affirmed.

*Judgment affirmed.*