Hillsborough, }
Jan. 4, 1921. }

FLORA HOYT v. MASSACHUSETTS BONDING AND INSURANCE CO. & a.

The limitation of actions on accident and health policies prescribed by Laws 1913, c. 226, applies to a policy issued prior thereto, stipulating that it shall expire one month after date but shall be renewable from term to term upon the payment of a monthly premium, where the policy was in fact so renewed within two years of action brought.

A renewal receipt is not void because of failure to incorporate in the renewed policy the provisions of Laws 1913, c. 226.

A second suit is not to be dismissed as vexatious where justice requires otherwise, but the rule requiring the best inventible procedure may require the trial of both cases together and the transfer to the supreme court as one action presenting all the legal questions involved.

Whether one insured by an accident policy was engaged, when injured, in an occupation classified as of the same hazard as that in which he was insured is a question of fact.

ACTION, to recover an indemnity, upon a policy originally issued August 18, 1908 by the United States Health and Accident Insurance Company, payable to the plaintiff upon the death by accident of her husband, Edward E. Hoyt, who was killed in a railroad accident March 3, 1916. Some time in 1914 the policy was assigned by the insurer to the defendant, Massachusetts Bonding and Insurance Company, who assumed and subsequently renewed the same from time to time. The policy provided for the payment of $1,000 in case of accidental death which sum had been increased fifty per cent, in accordance with the terms of the policy, by its five consecutive full year's renewal. The policy also provided for double indemnity in case of injury causing death "sustained by the assured while riding as a passenger in or upon a . . . public passenger conveyance provided by a common carrier for the regular transportation of passengers,

and such injury is due directly to an accident happening to such . . . conveyance."

Proofs of loss were duly filed March 14, 1916, in which the plaintiff claimed $3,000. April 13, 1916, the defendants' local agent under express authority from the defendants wrote the plaintiff's attorney that the defendants denied all liability for any amount in excess of $375 and tendered a draft for $750 by way of compromise and to avoid litigation as the company were willing and anxious to make an equitable adjustment, but reserved all rights and defences in case the tender was refused. This was done and suit was brought April 14, 1916. The defendants filed no pleadings but when the plaintiff rested at the trial before the court April 3, 1918, they moved for a nonsuit upon the ground that the action was prematurely brought.

The policy required proofs of loss to be filed within two months from date of death and further provided, "no action at law shall be brought before three months nor after six months from the date on which this paragraph requires such proofs to be furnished. . . . Any limitations in this policy contrary to the state laws governing the same are hereby extended to the minimum period provided by said laws." The court ruled as matter of law that the objection could be taken under the general issue and ordered a nonsuit, and the plaintiff excepted. On the same day, April 3, 1918, the plaintiff brought a suit which was entered at the May term, 1918, in which the defendant seasonably filed a plea in abatement averring another suit pending for the same cause of action, the exceptions to the order of nonsuit not having been withdrawn. The plea was overruled and the defendants excepted. At the close of the evidence the defendants moved to dismiss the action because it was brought more than six months after the date on which the policy required proof of claim to be furnished. The motion was denied and the defendants excepted. The policy provided: "If the assured sustains injury, fatal or otherwise, . . . after having changed his occupation to one classed by the company as more hazardous than that herein stated, or while doing any act or thing pertaining to any occupation so classed, then this insurance shall not be forfeited, but the liability of the company shall be only such proportion of the principal sum or other indemnity as the premium paid by the assured will purchase at the rate fixed by the company for such more hazardous occupation."

Hoyt was classified as a "B" risk in the policy, his occupation having been given as "contractor and builder, supervising only." For a number of years prior to his death, to the knowledge of the

agent collecting the premium, he had been engaged in buying and selling horses, making frequent trips to the West, where he purchased them. March 1, 1916, the New York Central Railroad over which his horses were shipped by the American Express company issued to him as a means of transportation a caretaker's certificate which entitled him to transportation "in car with horses or in coach or smoking car from East St. Louis to Boston, Mass. . . . except that if the train did not carry a coach or smoking car, transportation will be furnished on last preceding or first following train." The train on which Hoyt's horses were shipped consisted of cars containing horses, express matter, empty refrigerator cars and one steel smoking coach, which was the rear car in which he was a passenger and was the third section of a regular passenger train in charge of a passenger conductor and full passenger crew and ran on a track customarily used for passenger traffic. While Hoyt rode on a caretaker's certificate he had nothing to do with the care or management of the horses. He was killed in a rear-end collision from a following freight train. The company claimed that Hoyt had changed his occupation to one classed as more hazardous than that stated in the policy in which it was liable to pay only $375 and was not liable for the double indemnity. By the classification in force when Hoyt was insured, and the only one of which he had notice, the occupation of "Horse dealer, not trainer or handler," was classed as a "B" risk, as was that under which he was insured as a contractor and builder; while that of "Horse dealer, shipping and handling in transit" was classed as a more hazardous occupation denominated "X."

By agreement the evidence was considered in both actions. The court found a verdict for $3,000, and that while the order of nonsuit was made as matter of law, if the court had any discretion as to the defendants' rights as to their pleas, in either case justice requires that the plaintiff have judgment. Transferred from the May term, 1918, of the superior court by *Kivel*, C. J.

*Irving E. Forbes* and *Taggart, Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the plaintiff.

*John O'Neill* (by brief and orally), for the defendants.

PARSONS, C. J. The grounds upon which the plea of former action pending was overruled in the second suit are not stated. If the court found the averment that both actions were for the same

cause of action was not sustained in fact, the law required the overruling of the plea. *Perham* v. *Lane*, 76 N. H. 580. The policy contains no stipulation as to when after proof of loss payment will be made. If as the defendants claim the objection is open to them under the general issue without setting up the defence by plea or brief statement it is because the stipulation postponing the bringing of the suit means that they are not in default until the expiration of the three months. The cause of action set up in the first suit is a default by the defendants before April 14, 1916. The defendants' answer is that they were not then in default. The charge in the second suit is of a default before April 3, 1918. The plaintiff fails in the first suit as the defendants claim because of the non-existence of a cause of action when the suit was brought which they concede subsequently existed at some time before the second suit was brought. It is a mathematical axiom that something and nothing are not equal, — in legal language are not the same. The law does not ordinarily compel parties to perform their contracts but gives the aggrieved party damages for the failure to perform. *Wiggin* v. *Manchester*, 72 N. H. 576, 581. In a suit on a note, policy or other contract the written document is not the cause of action but a part of the evidence to sustain it. The cause of action is the failure of the defendants to perform as agreed. A suit alleging the breach of an agreement to pay January 1, is not for the same cause of action as a suit alleging the breach of an agreement to pay June 1 of the same year. The mistake of counsel in bringing the suit upon the erroneous supposition that the evidence relied upon will support it, does not make a later suit, which the evidence will support, one for the same cause of action. But the overruling of the plea in abatement is sustainable upon another ground. Whether the defendants were liable for double indemnity and upon what classification the base rate was determinable were questions fairly in controversy between the parties. For the settlement of this controversy the parties were entitled to the best inventible procedure. *Owen* v. *Weston*, 63 N. H. 599. "The test usually applied to determine questions of procedure is to inquire what justice requires in that situation." *LaCoss* v. *Lebanon*, 78 N. H. 413, 417 and cases cited. The time before which suit must be brought had by the terms written in the policy expired before the defendants objected that the first suit was premature. Unless that time was extended by the statute, Laws 1913, *c.* 226, hereinafter considered, the second suit could not be maintained, *Maynard* v. *Insurance Co.*, 76 N. H. 275, while the two years allowed by the

statute would expire before the exceptions in the first suit could in the usual practice be determined in the supreme court. To enable the plaintiff to obtain relief by another suit it was necessary that such suit be instituted at once. As recovery in the second suit was not certain, abandonment of the exceptions in the first suit might determine the controversy against the plaintiff without any trial of the merits, which might be had if the exceptions should be sustained in the first suit. While the decision in *Davis* v. *Insurance* Co., 73 N. H. 425, was apparently fatal to the exceptions, it was by no means certain that the court, upon a reopening of the question and an examination of the numerous authorities holding that the distinct denial of liability by an insurance company is a waiver of proofs of loss and of stipulations of the policy postponing suit (2 May Insurance, s. 469; *Whitten* v. *Insurance Co.*, 165 Mass. 343, 345), might not reach a different result and conclude, as defendants' counsel expresses it, that a mistake had been made. As has been stated, the policy did not provide when the loss was payable. The evidence that the company had investigated the accident and offered payment before suit brought might be construed as an admission that the loss was then payable; and as the object of the stipulation deferring payment for a certain time after proof of loss is to enable the insurance company by investigation to determine the fact and extent of its liability, it might be held that the admission that this had been done was evidence of a waiver of the stipulation postponing suit, although the view expressed in *Davis* v. *Insurance Co.*, *supra*, was adhered to. If, however, the plaintiff had waived her exceptions relying upon the second suit and failed therein, this would not have prevented further litigation of the first suit. In such case, upon application the plaintiff would undoubtedly have been permitted to renew her exceptions in the first suit and to have the same brought forward and the validity of the exceptions determined in due course. Such procedure might have caused delay, involved two transfers to this court and probably two trials of the fact. It would not be the best inventible. It would not be as prompt, inexpensive, or convenient as the procedure which was adopted; trial of both cases together and their transfer as one presenting all the legal questions involved. The procedure followed was that advised in *Tinkham* v. *Railroad*, 77 N. H. 111. The conclusion there reached that when it is doubtful whether the plaintiff's rights could be secured in the first suit justice does not require the dismissal of the second is here decisive. If *Gamsby* v. *Ray*, 52 N. H. 513, is properly construed as holding that a second suit is necessarily in all

cases vexatious as matter of law it is overruled by *Tinkham* v. *Railroad, supra,* to the extent that the second suit is not to be dismissed as vexatious when justice requires otherwise.    This conclusion is now reaffirmed.

The defendants object that the second suit is brought too late, not being brought within six months after the ·date when proofs were required to be furnished.

Chapter 226, Laws of 1913, deals in much detail with the provisions of health and accident policies and provides that after the chapter was in force, October 1, 1913, no such policies should be issued or delivered which did not contain the provisions specified in the chapter and further (*s.* 9) that a policy issued in violation of the act should be construed as provided in the act and that when any provisions in such policy were in conflict with the provisions of the act, the rights, duties and obligations of the insurer, the policy holder and the beneficiary should be governed by the provisions of this act. The act provides that all such policies should contain a standard provision limiting the time within which suit may be brought upon the policy as follows: "No action at law or in equity shall be brought to recover on the policy prior to the expiration of sixty days after proof of loss has been filed in accordance with the requirements of this policy, nor shall such action be brought at all unless brought within two years from the expiration of the time within which proof ·of loss is required by the policy."

The second suit was brought within the two years.    The defendants' answer is that the act applies to policies issued and delivered after the act went into force and does not apply to this policy which was issued and delivered five years before.

It has been held that a statute providing that no provisions in any policy of insurance limiting the time within which a suit or action on the policy may be brought to less than one year shall be valid, applies to existing policies.    *Smith* v. *Fire Association,* 112 Va. 192; s. c. 38 L. R. A (N. s.) 1016.    But that question is not here involved. The policy in suit was issued August 18, 1908, expiring one month after date but renewable from term to term subject to all its conditions, upon the payment of the monthly premium in advance.    In fact it was renewed yearly by the payment of a year's premium.    It was so renewed in August, 1914, and August, 1915, in each case after the act of 1913 was in force.    In that act the legislature dealt with the whole subject of accident and health insurance and plainly intended that the relations between insurer, insured and beneficiary

created by contract after October 1, 1913, should be governed by its provisions. The liability of the defendants in this case depends on the contract of renewal made in 1915. The defendants could not issue a policy after October 1, 1913, except under the provisions of the act. Any other contract of insurance of this character was prohibited. They could not evade the statute by issuing a contract of insurance and delivering a policy whose terms should be determined by reference to some other document. The renewal receipt issued and delivered after October 1, 1913, was not void because it did not incorporate in the renewed policy the provisions of the act but by the terms of the act it must be construed as if these provisions were incorporated therein.

Whether in ignoring the legislation by issuing receipts purporting to continue in effect a policy not containing the required stipulations the defendants have rendered themselves liable to the penalties of the act is not before the court. See section 13. But the policy itself takes care of the question. It was renewable subject to all of its conditions. The condition limiting suit provides, "Any limitations in this policy contrary to the state laws governing the same are hereby extended to the minimum period provided by said laws." When the policy was renewed in 1914 and 1915, the minimum provision by which insurers in this class of policies might limit the bringing of suit was two years. The policy by its terms was renewed subject to this condition that the provision as to limitation of suit was extended to two years to conform to the laws of the state.

The second suit was brought within the two years and the motion to dismiss because the suit was brought too late was properly denied.

Whether the insured when killed was engaged in an occupation classified as of the same hazard as that in which he was insured was a question of fact. There was evidence tending to show that his occupation was that of a horse dealer, not trainer or handler, which was classed as a "B" risk and that he was not a horse dealer shipping and handling in transit, class "X"; there was also evidence tending to prove that he was riding as a passenger in a public passenger conveyance provided by a common carrier for the regular transportation of passengers. As there was evidence on both of these questions the conclusion of the trier of fact cannot be disturbed. The verdict for $3,000 results from the facts found. As the plaintiff is entitled to recover in the second suit, conceding the position of the defendants as to the non-maintainability of the first, the validity of the order of nonsuit in that suit is not considered.

But this procedure is not to be interpreted as a holding that the exceptions are without merit. The exceptions in the second suit are overruled. The superior court will equitably adjust the costs in the two suits.

*In the first suit, judgment for the defendants.*

*In the second, judgment for the plaintiff.*

All concurred.