## VON CROME v. TRAVELERS' INS. CO. OF HARTFORD, CONN.*

(Circuit Court of Appeals, Eighth Circuit.
February 16, 1926.)

No. 7040.

**I. Insurance ⬡⟹665(6).**

Uncontradicted facts *held* to establish as matter of law that insured while sane committed suicide.

**2. Courts ⬡⟹348.**

Under Conformity Act Sept. 24, 1789, § 34 (Rev. St. § 721 [Comp. St. § 1538]), competency of evidence in civil case is determinable by law of state wherein trial is had.

**3. Courts ⬡⟹348—Certificate of state bureau of vital statistics, showing cause of insured's death, held properly admitted in evidence (Rev. St. Mo. 1919, § 5816; Conformity Act Sept. 24, 1789, § 34 [Rev. St. U. S. § 721, being U. S. Comp. St. § 1538]).**

In action on policy insuring against death by accident, certificate of state bureau of vital statistics, showing cause of insured's death, made competent by Rev. St. Mo. 1919, § 5816, *held* properly·admitted in evidence, in view of Conformity Act Sept. 24, 1789, § 34 (Rev. St. U. S. § 721, being U. S. Comp. St. § 1538).

**4. Trial ⬡⟹252(14)—Where facts established suicide while sane as matter of law, refusal of charge on presumption of law against fact of suicide was not error.**

Where uncontradicted facts established as matter of law that insured, while sane, committed suicide, it was not error for court to refuse charge on presumption of law against fact of suicide.

**5. Insurance ⬡⟹465—Suicide while sane of one insured against death by accident precludes recovery, notwithstanding state statute (Rev. St. Mo. 1919, § 6150).**

Rev. St. Mo. 1919, § 6150, declaring that suicide of insured shall not be a good defense to an action on policy, unless it was contemplated by insured when policy was taken out, does not apply in case of suicide of sane per-

*Certiorari denied 46 S. Ct. 482, 70 L. Ed. —.

son insured against death by accident, since suicide of sane person is not an accident.

**6. Constitutional law ⬡⟹105—Insurance ⬡⟹465 —Beneficiary of one insured against death by accident held not entitled to recover after suicide while sane of insured, notwithstanding state statute and judicial construction prevailing when policy was issued (Rev. St. Mo. 1919, § 6150).**

Where suicide while sane of one insured against death by accident was established, Rev. St. Mo. 1919, § 6150, declaring suicide not a defense unless contemplated when policy was taken out, did not entitle beneficiary to recover, death not being accidental, nor had insured, whose policy was contract from year to year, renewable by payment of premiums, by reason of judicial construction prevailing when policy was taken out, anything in the nature of a vested right to commit suicide, which could not be abrogated by change in judicial construction, and which would support recovery where, after such change, he renewed contract four times.

**7. Insurance ⬡⟹465.**

As respects right to accident insurance suicide by an insane person is an accident, but suicide by a sane person is not.

**8. Appeal and error ⬡⟹1033(1).**

Beneficiary cannot complain that contract of insured, invalid when made, has become valid during its life by change in judicial construction.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Action by Margaret Chaput Von Crome, executrix of the estate of Julius Kalter, deceased, against the Travelers' Insurance Company of Hartford, Conn. Judgment for defendant, and plaintiff brings error. Affirmed.

Frederick H. Bacon, of St. Louis, Mo. (Edward W. Foristel and James J. O'Donohoe, both of St. Louis, Mo., on the brief), for plaintiff in error.

Frank H. Sullivan, of St. Louis, Mo. (James C. Jones, Lon O. Hocker, Eugene H. Angert,_and James C. Jones, Jr., all of St. Louis, Mo., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and YOUMANS and FARIS, District Judges.

FARIS, District Judge. Plaintiff in error sued defendant to recover on a policy of accident insurance on the life of one Kalter, deceased. There was a verdict for the defendant, obviously upon the defense that the insured had committed suicide while sane, and plaintiff, who is executrix of insured, brings error.

The petition of plaintiff counted upon death by an accidental shooting of insured without averring whether the shot was fired by insured or by another; the answer was a general denial, which was a proper pleading, under the state practice, by which to raise the defense of suicide, in an action on an accident policy. The facts are hardly controverted. Briefly they run thus:

Insured, the manager of a corporation operating on the fifth floor of a building in St. Louis, took out the policy in question in the year 1913. It was for $5,000 and ran for one year, but there was a provision by which the amount of the insurance would be annually increased upon renewal, and a provision for renewal from term to term by the mere act of payment of premiums in advance; so that on December 31, 1923, the policy, perforce annual renewals, was still in force, and was for the sum of $7,500. On December 31, 1923, insured was last seen alive. Around 2 o'clock in the afternoon of that day the last of his employees left his place of business, leaving him alone on the premises. It was his custom to close the place himself at each day's end of business. This he seemingly did at 2:17 in the afternoon.

He boarded with the plaintiff, who is the sole legatee under his will. Failing to come home on either Sunday or Monday, December 31, plaintiff became apprehensive about him and endeavored through her attorney to have him located. On this Sunday he had called on another woman friend at her apartment, where he remained some hours at least. While there he was extremely dejected and melancholy; said he was being hounded by a woman, and was going to kill himself. He tried to find a revolver, belonging to this woman, but, failing, he was reminded by her that he had a revolver of his own, and, moreover, she begged him not to kill himself in her rooms, lest she be subjected to trouble and unwarranted suspicion. In all this he acquiesced, and left, averring his intention to kill himself. Efforts to reach him by telephone at his office on Monday afternoon failed, and were met by the "busy" signal. Later it was found that the receiver was off the hook, which rationally accounts for the busy signal.

On Tuesday morning, about 9 o'clock, the police, who had been informed of the disappearance of insured by the attorney of the plaintiff, whose attention, as said, had on the day before been drawn to the matter by plaintiff, came to the place of business of insured, and, opening the door with a skeleton key owned by one of the officers and entering, found insured sitting in a chair, with his feet extended, and a bullet hole through his head, dead. His hands were lying in his lap. Clutched in the right hand was a revolver, one chamber of which had been discharged. The other chambers were still loaded. This revolver was a 32-caliber Smith & Wesson blue steel weapon of the same size and sort as that known to have been owned by insured. His forefinger was still in the trigger guard, and was pressing on the trigger so hard that the weapon stood half-cocked.

His clothing was in no wise disarranged. No evidence of a struggle appeared. None of his effects had been taken from his person, and no property had been taken from the office. The bullet which killed him, after passing through his head, was found in such position as indicated he was seated in the chair when he was shot. There were powder burns on his head, where the bullet entered. One or two witnesses for the plaintiff did not see them, because they did not look for them. There is positive evidence of their presence, and only negative evidence of their absence. Every door and window were found undisturbed and locked on the inside. Each of these openings into the place was connected with a burglar-alarm system in such wise that, upon the opening of either a door or a window, an alarm would ring in the central office. No such alarm was rung from the time the door registered "closed" at 2:17 in the afternoon of Monday, December 31, till the door registered "opened" by the police at 9 o'clock of Tuesday, January 1, 1924, when insured was discovered dead.

Obviously, then, insured shot and killed himself. The situation conclusively negatives every other theory. Did he shoot himself intentionally or accidentally? We think the uncontradicted facts answer this question and absolutely destroy the presumption and rebut the evidence against suicide. These facts are that he had only shortly before been greatly dejected, because a woman was hounding him, and had said he was going to kill himself. The lethal means held by him in mind and intention was a revolver. The circumstances negative the fact that he was, when he shot himself, either loading or cleaning the revolver, or that he was defending himself, or that he had any occasion to do so. The range of the bullet shows that he had held the pistol practically at right angles to his head, and thus shot himself in the right temple just in front of his right ear. When

he pressed the trigger the pistol was fully loaded; so the empty weapon theory is inapplicable.

[1] In the light of these facts, the conclusion of suicide is inevitable as a matter of law. But it is insisted by plaintiff (a) that, perforce a Missouri statute (section 6150, R. S. Mo. 1919), the contention that insured committed suicide cannot be made; (b) that, even if this contention is not well taken, the court nisi erred in refusing to charge the jury that the presumption of law is against suicide; (c) that the court erred in refusing to charge the jury, in effect, that, before the fact of suicide of insured would preclude recovery, there must have existed, when the policy was issued, a contemplation of suicide in the mind of insured; and (d) that the court erred in admitting the certificate of the state bureau of vital statistics as to the cause of the death of insured, notwithstanding the provisions of a state statute, which make such a certificate competent evidence. Section 5816, R. S. Mo. 1919.

[2, 3] Taking the shortest and least involved of these contentions first: It is well-settled that under the so-called Conformity Act of Congress of September 24, 1789, c. 20, § 34 (section 721, R. S. [Comp. St. § 1538]) the competency of evidence in a civil case is determinable by the law of the state wherein the trial is had. Parker v. Moore (C. C.) 111 F. 470; Wright v. Bales, 2 Black, 535, 17 L. Ed. 264. So much being settled, the case of Griffith v. Continental Casualty Co., 253 S. W. 1043, 299 Mo. 426, wherein the identical point was ruled, settles the point against plaintiff's contention.

[4] Touching the contention of plaintiff that it was here and always is the duty of the court to charge the jury that a presumption of law existed against the fact of suicide, it is enough to say of the contention that this is sometimes true and sometimes not true. New York Life Ins. Co. v. Bradshaw (C. C. A.) 2 F.(2d) 451; New York Life Ins. Co. v. Weaver (C. C. A.) 8 F.(2d) 680; Brunswick v. Insurance Co., 213 S. W. 45, 278 Mo. 173, 7 A. L. R. 1213. In this particular case, since there was evidence, from what the insured said as to his intent to kill himself, and from the circumstances, evidence that he had killed himself, the presumption against suicide as a matter of law disappeared from the case. There was no longer any reason to invoke any presumption of law about the matter. Griffith v. Con. Cas. Co., supra; New York Life Ins. Co. v. Weaver, supra; Brunswick v. Insurance Co., supra; Mocko-

wik v. Kansas City, St. J. & C. B. R. Co., 94 S. W. 256, 196 Mo. 571.

The true doctrine, as still held by the Supreme Court of Missouri, is found in the Brunswick Case, supra, which was reversed, however, because the court nisi charged the jury that no such presumption existed. This was error in that case, but only because defendant insurance company had therein offered no evidence whatever, and the evidence offered by the plaintiff was, in view of the rule theretofore announced in Reynolds v. Casualty Co., 201 S. W. 1128, 274 Mo. 831, just as consistent with accident as it was with suicide. The contention of plaintiff in the last analysis is that she may deduce, from the facts and circumstances shown in proof, a presumption against death by suicide, and thereafter, regardless of the state of the proof of suicide, she may again add such presumption to her side of the case. This is not the law. Brunswick v. Insurance Co., supra; Griffith v. Casualty Co., supra; State v. Swearengen, 190 S. W. 268, 269 Mo. loc. cit. 189; Mockowik v. Railway, 94 S. W. 256, 196 Mo. loc. cit. 571. For obviously, if it were the law, every case of alleged suicide would have to go to a jury. Never again could it be possible to say as a matter of law that suicide appears from the facts shown, to a certainty which makes it the duty of the trial judge so to charge. Further, if this contention were the law, no case heretofore could ever have been taken from the jury, on the ground that the uncontradicted evidence showed suicide conclusively, for the very simple reason that the presumption itself would carry the case to the jury. Yet this has many times been done, and the books are full of cases wherein the courts held that suicide was shown as a matter of law. Agen v. Insurance Co., infra; Green v. Insurance Co., 182 N. W. 811, 192 Iowa, 32; New York Life Ins. Co. v. Watters, 243 S. W. 831, 154 Ark. 569; Eckendorff v. Insurance Co., 97 So. 395, 154 La. 183; Gavin v. Des Moines Life Ins. Co., 126 N. W. 906, 149 Iowa, 152; Voelkel v. Supreme Tent, etc., 92 N. W. 1104, 116 Wis. 202; Bernick v. Illinois, etc., Ass'n, 175 Ill. App. 511; Mott v. Sovereign Camp, etc., 244 S. W. 733, 155 Ark. 259; Fletcher v. Sovereign Camp, etc., 32 So. 923, 81 Miss. 249; Felix v. Fidelity, etc., Co., 64 A. 903, 216 Pa. 95; Skala v. New York Life Ins. Co., 172 P. 1046, 24 N. M. 78; New York Life Ins. Co. v. Weaver (C. C. A.) 8 F.(2d) 680; New York Life Ins. Co. v. Bradshaw (C. C. A.) 2 F.(2d) 457.

We conclude that no error was committed

in refusing to charge as to the continued existence, as a matter of law, of the presumption against suicide. Moreover, the short answer to this contention is that the trial court might have charged the jury, that the insured had committed suicide. The uncontradicted facts show suicide as a matter of law. Agen v. Metropolitan Ins. Co., 80 N. W. 1020, 105 Wis. 219, 76 Am. St. Rep. 905, and cases cited last supra. If, then, plaintiff had no case, she cannot complain as to errors in the charge. Fels v. Railway (C. C. A.) 275 F. 881; Robinson v. Denver, etc., Co., 164 F. 174, 90 C. C. A. 160.

[5, 6] The other two questions, reserved for discussion and urged as error, present but a single point. These questions are: Did section 6150, R. S. of Mo. 1919, apply and cut off the defense of suicide? and (b) ought the court so to have charged in the language of the section, supra? The single point is that, if plaintiff be correct in urging the applicability of section 6150, supra, to the policy of accident insurance in controversy here, the trial court ought to have charged the jury to find for plaintiff for the full sum of $7,500, with interest, and no other charge was necessary. If, in short, section 6150, supra, applied, the suicide of insured presented no legal reason for a refusal to pay, and the mere proof of death made out prima facie liability, which could be rebutted only by proof that insured contemplated suicide when he applied for the policy, and of such proof in the record there was none. This section reads as follows:

"In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

[7] The above section has been a part of the statutory law of Missouri for many years. It was long doubted whether it was intended to apply, and whether it ever applied, to a policy of insurance against death by accident. In the case of Logan v. Insurance Co., 47 S. W. 948, 146 Mo. 114, decided by the Supreme Court of Missouri in 1898, it was held that the above section applied to suicide under such a policy when such suicide was in fact an accident. (For brevity we use the word "suicide" as a synonym of self-destruction, although, accurately speaking, the word

carries with it the further concept of voluntary or intentional self-destruction.) It is fairly well settled that, while suicide by an insane person is an accident (Brunswick v. Insurance Co., 213 S. W. 45, 278 Mo. 154, 7 A. L. R. 1213; Travelers' Ins. Co. v. McConkey, 8 S. Ct. 1360, 127 U. S. 661, 32 L. Ed. 308; Accident Ins. Co. v. Crandal, 7 S. Ct. 685, 120 U. S. 527, 30 L. Ed. 740), suicide by a sane person is not an accident, within the purview of a policy of accident insurance. See cases last cited supra.

Twenty-one years after the Logan Case was decided, it was held by the Supreme Court of Missouri, in the case of Brunswick v. Insurance Co., supra, that, if the insured commit suicide while insane, his death, being unintentional, must be held to be accidental, and, though suicide be expressly excepted in the policy, the statute (section 6150, R. S. 1919) eliminates the excepting clause of the policy, and the beneficiary may recover; but, if the insured be sane at the time of his death, the burden, perforce the contract, is on the plaintiff to prove that death resulted from accidental injuries, and the case is not affected by the above statute, and so, the statute notwithstanding, the burden still rests on the plaintiff to show that, if insured killed himself, he did it accidentally and not intentionally. This conclusion, it was ruled, inevitably followed from the contract of insurance, which stipulated that liability to pay insurance against death was modified by the condition that such death should result from an accident, and suicide by a sane person is not an accident; that any other view presented a stultifying contradiction in terms; and so stand the subsequent cases in Missouri upon the point to this day. Precisely as to the effect of this statute on suicide by a sane person insured against death by accident, the Supreme Court of Missouri, as appears in an excerpt from the Brunswick Case, held this:

"While the above section makes absolutely void all stipulations exempting liability on account of suicide and all defenses bottomed on the fact of suicide, yet it nowhere relieves the plaintiff in an action upon a policy of accident insurance from making proof that the death of the assured was caused by an accident. In short, as forecast above, the section does not write into an accident policy a cause of action where none existed upon the facts. Granting for the sake of argument that the section (the applicability of which to accident policies, though now fairly well settled, has been strenuously and ably combatted and denied) could have gone further and

provided that 'suicide by a sane person shall be deemed to be an accident,' it is enough to say that it does not so provide." Brunswick v. Insurance Co., 213 S. W. 45, 278 Mo. loc. cit. 169, 7 A. L. R. 1213.

The earlier case of Logan v. Insurance Co., supra, was distinguished in the Brunswick Case, and was obviously capable of being distinguished, because the admitted facts conceded that the death there dealt with was in fact an accident. So, down to the day the case of Brunswick v. Insurance Co., supra, was decided, the Supreme Court of Missouri had never construed section 6150, supra, as applying to a case of suicide by a sane person, in an action upon a policy of insurance insuring against death by accident. Of course, in what may be called an ordinary life insurance policy the section has been many times so construed, and such is undoubtedly yet the law in Missouri. But such latter construction is wholly afield from the question here.

It follows, that there is nothing in the Missouri ruled cases to militate against the defense of suicide here, or which holds that section 6150, supra, applies to suicide by a sane person when insured against death by accident, and when a suit is brought upon such a policy. It is true that much sweeping language is to be found in the Logan Case, but, as said already, when the facts up for judgment in that case are examined, it will be seen that the fact there conceded, namely, that death, though caused by self-destruction, was accidental, clearly distinguishes it from the Brunswick Case. But plaintiff erroneously contends contra, and. further contends that the case of Whitfield v. Ætna Life Ins. Co., 27 S. Ct. 578, 205 U. S. 489, 51 L. Ed. 895, decided in 1907, sustains her position and had the effect to give insured, who took out his policy in 1913, a sort of vested, contractual right to commit suicide, which the ruling in the Brunswick Case in 1919 was impotent to affect in any wise. Query may well be made here whether this contention will apply when some four annual renewals of the original contract were made after the Brunswick Case was decided and before the death of the insured. Eicks v. Casualty Co., 253 S. W. 1029, 300 Mo. 279; North American Oil Co. v. Globe Pipe Line Co. (C. C. A.) 6 F.(2d) 564; Donnelly v. Insurance Co., 192 N. W. 585, 222 Mich. 214; Steele v. Indemnity Co., 197 N. W. 101, 158 Minn. 160; Hoyt v. Insurance Co., 113 A. 219, 80 N. H. 27; Richmond v. Insurance Co., 130 S. W. 790, 123 Tenn. 307, 30 L. R. A.

(N. S.) 954; Pac. Mutual Ins. Co. v. Vogel (C. C. A.) 232 F. 340; Brawner v. Indemnity Co., 246 F. 637, 158 C. C. A. 593.

But, passing that suggestion for the present, it must be conceded that the broad language of the Supreme Court of the United States in the Whitfield Case seemingly construes section 6150, supra, as applying to a Missouri policy covering death by accident, when such death shall occur by suicide, whether the insured shall be sane or insane. In so doing, it followed what it conceived to be the construction put upon the statute by the Supreme Court of Missouri in the Logan Case; although, as the Brunswick Case labored to show, the Logan Case laid down no such all-embracing rule, so far as concerned the facts up for judgment in that case.

That this holding by the Supreme Court of the United States in the Whitfield Case' was in deference to its view of the Logan Case is conclusively demonstrated, when it is considered that that court, 21 years before had held, in the case of Travelers' Ins. Co. v. McConkey, 8 S. Ct. 1360, 127 U. S. 661, 32 L. Ed. 308, that in an action on a policy of insurance insuring against death by accident, the burden was on plaintiff therein to show death by accident and that death by suicide was not an accident, which is about all that was held by the Missouri court upon this same point in the Brunswick Case. This clearly indicated as forecast, that in ruling in a thorough-going way in favor of the application of section 6150, supra, to all policies insuring against death by accident, as it seemingly did in the Whitfield Case, the Supreme Court of the United States was misled by the broad language of the Logan Case, and so felt constrained to follow what it believed to be the ruling of the Supreme Court of Missouri in the matter of the construction of a local statute.

In this situation the plaintiff strenuously insists that, while a federal court is bound to follow the construction put upon a state statute by the Supreme Court of the state, yet till such statute has been construed by the local Supreme Court a federal court has the right authoritatively to construe the statute for itself, and the latter construction will stand as the proper construction in the federal courts, till the state Supreme Court does construe the statute; thereafter ordinarily the construction by the state Supreme Court will be followed. In case, however, there shall be a conflict between the construction by the federal court and that of the state court, and contracts shall be in issue which

were, pending the federal construction of the statute, entered into in reliance on such construction, the latter will be followed, in the interpretation of such contracts, to the exclusion of the construction of the local courts.

Conceding, arguendo, the existence of such a rule, does it apply to the contract and facts in the case at bar? We do not think so. There are two reasons for our conclusion, besides the inherent anomaly existing in the plaintiff's contention that there may exist a vested contractual right in an insured to commit suicide. One of the reasons is that, while the policy in controversy was issued in 1913, and was renewable by the mere act of paying the premium in advance, it was yet a contract for only one year, unless it was so renewed. The defendant had the right to cancel it, and insured had the right to put an end to it at the end of any given year, merely by omitting to pay the premium in advance. It was by the voluntary act of insured thus renewed some four times after the Brunswick Case was ruled. So there were some four contracts made after the latter event, and into each of these, including, of course, that one in effect when the death of insured occurred, the rule written in the Brunswick Case was carried as a matter of law. See Hoyt v. Insurance Co., 113 A. 219, 80 N. H. 27, North American Oil Co. v. Globe Pipe Line Co. (C. C. A.) 6 F.(2d) 564, and other cases cited above on the point.

[8] The other reason is that, so far from rendering a good contract void, the effect of the Brunswick Case (accepting in full, for the argument's sake, plaintiff's contention that it changed the rule of the Logan Case) was to render a void contract good. For in the policy, as written in 1913, the insured had agreed with the insurer that suicide, sane or insane, was not included among the accidental deaths open under the policy for the selection of the insured. The Brunswick Case, at most, held that, the statute to the contrary notwithstanding, the above contract was valid as written, so far as concerns the phase of suicide here involved. So, even if all that is said by plaintiff as to vested contractual rights and as to the rule of statutory construction by state and federal courts be conceded to be the law, it is seen that it has no application here, but that it operates upon a state of contract which is the very opposite to that before us. So, we again assert, plaintiff could not complain because the solemn contract of insured, invalid when made, has during its life become valid by a change in judicial construction. Ewell v. Daggs, 2 S.

Ct. 408, 108 U. S. 143, 27 L. Ed. 682; Gross v. Mortgage Co., 2 S. Ct. 940, 108 U. S. 477, 27 L. Ed. 795; Rosenplanter v. Insurance Co., 96 F. 721, 37 C. C. A. 566, 46 L. R. A. 473.

It follows that the judgment was for the right party, there are no errors warranting reversal, and the case should be affirmed, which is accordingly ordered.